FORD v CLARK EQUIPMENT COMPANY

TRIM v CLARK EQUIPMENT COMPANY

Docket Nos. 77-3488, 77-3489. Submitted June 13, 1978, at Grand Rapids.—Decided November 28, 1978.

Robert L. Ford was killed and Lee Trim injured in a fall from a platform. The two men were employees of B. L. Harroun & Son, Inc., which had contracted to install an overhead sprinkler system in a factory building owned by Clark Equipment Company. The accident occurred when a rope hanging from the ceiling-level platform on which the men were working was caught on a hi-lo being driven by a Clark employee, jerking the platform and causing the men to lose their balance. Nancy A. Ford, as administratrix of Ford's estate, and Lee Trim and Julie Trim, brought separate actions against Clark for damages for negligence. Clark demanded that Harroun assume the defense of the suits pursuant to an indemnity clause contained in the contract. Harroun refused to assume the defense and Clark brought third-party actions against Harroun alleging its right to indemnification both under the contract and at common law. Clark reached proposed settlements with the plaintiffs and informed Harroun of its intent to settle unless Harroun assumed the defense. Harroun again refused the tender of defense, Clark settled the suits, and the third-party action went to trial. The Berrien Circuit Court, Zoe S. Burkholz, J., entered a judgment of no cause of action in favor of Harroun. Clark appeals, and the cases were consolidated for hearing. *Held:*

1. The contractual indemnity clause is governed by a statute which voids a promise in a construction contract to indemnify the promisee against liability for damages for injury resulting from the sole negligence of the promisee. In this case the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 13 Am Jur 2d, Building and Construction Contracts § 141.

Building contractor's liability, upon bond or other agreement to indemnify owner, for injury or death of third persons resulting from owner's negligence. 27 ALR3d 663.

[2] 17 Am Jur 2d, Contracts § 230.

[3-5] 15A Am Jur 2d, Compromise and Settlement § 46.

41 Am Jur 2d, Indemnity §§ 33, 42.

indemnity agreement purported to indemnify Clark in the event an injury was caused in whole or in part by Clark. The clause is severable. The statute renders void and unenforceable the clause insofar as it relates to Clark's sole negligence. The promise to indemnify if Clark was partially responsible for the injury is not voided by the statute and is enforceable.

2. The trial court erred by requiring that in order to recover Clark must show that it was actually liable to Ford and Trim. In order to encourage settlements of suits, Clark should be required to show only its potential liability to the plaintiffs. In this case, it must be shown that the facts are covered by the indemnity agreement and that the settlements were reasonable.

Reversed and remanded.

1. INDEMNITY—CONTRACTS—CONSTRUCTION CONTRACTS—NEGLIGENCE —STATUTES.

An indemnity provision in a construction contract which seeks to protect the promisee from liability for personal injury or property damage arising from the sole negligence of the promisee is void (MCL 691.991; MSA 26.1146[1]).

2. CONTRACTS—INDEMNITY—SEVERANCE—NEGLIGENCE.

A lawful promise based on good consideration is not rendered invalid because an unlawful promise is made for the same consideration; a contract which purported to indemnify a promisee for injury caused solely or in part by the promisee may be severed so that the illegal promise to indemnify for the promisee's sole negligence is rendered void and the remainder of the contract remains enforceable.

3. INDEMNITY—SETTLEMENT OF SUIT—BURDEN OF PROOF—POTENTIAL LIABILITY.

The burden on a defendant in a suit who settles after a tender of the defense to a contractual indemnitor must not be too heavy if the state's policy of encouraging settlements is to be effective; therefore, an indemnitee-defendant, in order to recover on the contract of indemnity, need show only its potential, as opposed to its actual, liability to an injured party.

4. INDEMNITY—BURDEN OF PROOF—SETTLEMENT OF SUIT—REASONABLENESS.

A contractual indemnitee, in order to recover where there is an enforceable contract of indemnity, where a reasonable tender of defense with notice that a settlement will be entered is made, and where the tender is refused, must show that the fact

situation of the original claim is covered by the contract of indemnity and that the settlement is reasonable.

5. Indemnity—Potential Liability of Indemnitee—Tender of Defense—Settlement of Suit.

The "potential liability" to an injured plaintiff which must be shown by an indemnitee who has tendered the defense to a contractual indemnitor along with notice that a settlement is to be entered and who has had that tender refused, is that the indemnitee acted reasonably in settling the underlying suit.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells),* for Clark Equipment Company.

*Hillman, Baxter & Hammond* (by *Robert N. Hammond* and *Joel M. Boyden),* for B. L. Harroun & Son, Inc.

Before: D. E. Holbrook, Jr., P.J., and T. M. Burns and W. Van Valkenburg,* JJ.

T. M. Burns, J. The important questions in these consolidated cases relate to the effect of MCL 691.991; MSA 26.1146(1) on the indemnity contract between third-party plaintiff, Clark Equipment Company (Clark) and third-party defendant, B. L. Harroun & Son, Inc. (Harroun) and, if the statute does not void the entire indemnity portion of a contract, did the trial court properly instruct the jury on the showing Clark was required to make to recover under the indemnity agreement. Clark also seeks review of two evidentiary questions.

Harroun contracted with Clark to install an overhead sprinkler system in one of Clark's facilities. One clause of the contract provided that Harroun indemnify Clark as follows:

"It is understood and agreed that the seller will

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

indemnify and save harmless the buyer from and against any and all claims for injury or death to persons or damage to property (including costs of litigation and attorney's fees) in any manner caused by, arising from, incident to, connected with or growing out of the work to be performed under this contract, regardless of whether such claim is alleged to be caused, in whole or in part, by negligence or otherwise, on the part of the buyer or its employees. Seller will promptly notify buyer in writing of any such claim, setting forth all details thereof known to seller."

On September 7, 1971, three Harroun employees were continuing the work which had begun several weeks earlier. Robert Ford and Lee Trim were working near the ceiling on a platform provided by Harroun. This platform apparently rested on the steel beam superstructure of the building, but was not secured to it in any way. As the work progressed, the Harroun employees would skid the platform along the steel to the next connection point. This skidding of the platform eventually brought Trim and Ford directly over one of the main aisleways of the plant.

In performing their work, Ford and Trim brought sections of pipe from the floor to the platform. To accomplish this, one end of a rope was tied to the platform and the opposite end lowered to the third employee who would tie it to the pipe. The men on the platform would then pull the rope, with the pipe, up to the platform. Unfortunately, the rope was not coiled on the platform as it was brought up, but was allowed to dangle down and form a loop.

Clark had not discontinued its operation while the sprinkler system was being installed. While the Harroun employees were on the platform pulling up the pipe, a hi-lo driver entered the building

and proceeded down the aisle.[1] The protective overhead cage of the hi-lo caught the loop which was formed by the rope and severely jerked the platform. Both Trim and Ford lost their balance and fell to the floor. Ford was killed in the fall and Trim was knocked unconscious.[2]

Ford's estate and Trim brought separate actions against Clark. Upon receipt of the complaint, Clark wrote to Harroun demanding that it assume the defense and indemnify Clark under the contract. The demand was refused. Clark then started the third-party actions involved in this appeal alleging both the contractual right to be indemnified and a claim of common law indemnity.

After substantial discovery was completed, Clark and the original plaintiffs reached a tentative settlement of the original suits. Clark informed Harroun that unless Harroun agreed to assume the defense on behalf of Clark and agreed to hold Clark harmless under the contract, Clark would consent to judgments of $50,000 in the Ford case and $3,500 in the Trim case. Harroun again refused to take over the defense because it believed the contractual indemnity agreement was void and because it believed that Clark could prevail on the merits at trial.

After the refusal to take over the defense, Clark consented to judgments in the amounts noted above and these judgments have been satisfied. The third-party action then proceeded to trial. Under the court's instructions, the jury found for

_____

[1] The third Harroun employee had left the area to get more materials and was, therefore, not acting as a lookout. There was testimony that one of the duties of the third employee who remained on the ground was to act as a lookout.

[2] Trim gradually improved and returned to work. The only lasting effect of the fall was blurred vision which his doctors have assured him will eventually disappear.

Harroun. Clark appeals in each case and we have consolidated the cases for review.

I

The first problem we must deal with is the effect of MCL 691.991; MSA 26.1146(1) on the contractual indemnity provision quoted above. The statute provides:

"A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable."

The court below, by its ruling and instruction, adopted Clark's argument that the policy of the act could be enforced by merely striking so much of the contractual provision as would require Harroun to indemnify Clark for Clark's sole negligence. The agreement would, therefore, provide indemnity if Clark and Harroun were concurrently negligent, or if Clark were held liable because of Harroun's negligence. Harroun argues that the entire indemnity provision of the contract is void and unenforceable.

The precise scope of this contract invalidating provision has never been stated. Compare, *Brda v Chrysler Corp,* 50 Mich App 332; 213 NW2d 295 (1973), with *Nanasi v General Motors Corp,* 56 Mich App 652; 224 NW2d 914 (1974). After considering the arguments raised by the parties, we

conclude the more appropriate rule is that applied in *Robertson v Swindell-Dressler Co,* 82 Mich App 382, 400; 267 NW2d 131 (1978). The rule is concisely stated in 17 CJS, Contracts, § 289(a), p 1220: "A lawful promise based on good consideration is not invalid because an unlawful promise is made for the same consideration."

In this case Harroun, in effect, made two promises in the indemnity clause; to indemnify for Clark's sole negligence and to indemnify if the injury was caused "in part" by Clark's negligence. Both promises are supported by the same consideration. Only the first promise is made illegal by the construction statute. The promise to indemnify Clark even if Clark was partially responsible for the accident or injury is not voided by the statute and may be enforced. It does no violence to either the contracting party's intent or the statute to sever this independent, unenforceable promise from the rest of the indemnity clause on the facts of this case. See, *Robertson v Swindell-Dressler Co, supra.*

## II

Having concluded that Clark may have indemnity under the contract in a proper case, unless it was solely responsible for the accident, we must next determine if the trial court correctly instructed the jury concerning what Clark must show in order to recover. The parties have stated the dispute to be over whether the indemnitee, Clark, must show "actual" or "potential" liability to Trim and Ford. Neither party has directed our attention to specific Michigan authority which covers this situation, and we have found none.

The trial court, by its instruction, required a

showing of actual liability from Clark to Ford and Trim. In other words, Clark was forced to prove, under its contractual indemnity theory, that it was negligent and that Ford and Trim were free from contributory negligence and additionally, to satisfy the construction statute, it was required to show that the injuries were not the result of Clark's sole negligence. For the reasons expressed below, we hold this was reversible error.

The policy of this state is to encourage settlements of suits. The settlement of a suit benefits both parties and the public. If this policy is to be effective, the burden on the defendant who settles after a tender of the defense to the contractual indemnitor is refused must not be too heavy. *Cf. Morrissette v Sears, Roebuck & Co,* 114 NH 384; 322 A2d 7 (1974). We, therefore, hold that to recover on the contract of indemnity, Clark need show only its potential, as opposed to its actual, liability to Trim and Ford. See discussion in *Tankrederiet Gefion A/S v Hyman-Michaels Co,* 406 F2d 1039, 1043, (CA 6, 1969).

We would be derelict in our duty to end the discussion at this point for the term potential liability means many things to many courts. We will attempt, therefore, to explain what this term means to us and what must be shown by the contractual indemnitee or indemnitor to recover or to avoid recovery. The present discussion must be limited in application, of course, to cases of the type involved here, that is, an enforceable contract of indemnity exists, a seasonable tender of defense with notice that a settlement will be entered is made and the tender of defense is refused.

To recover under these circumstances the indemnitee must show that the fact situation of the original claim is covered by the contract of indem-

nity and that the settlement is reasonable. *Parfait v Jahncke Service, Inc,* 484 F2d 296 (CA5, 1973).

Potential liability actually means nothing more than that the indemnitee acted reasonably in settling the underlying suit. The reasonableness of the settlement consists of two components which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. *Chicago, R I & P R Co v Dobry Flour Mills,* 211 F2d 785 (CA10, 1954), *Wisconsin Barge Line, Inc v Barge Chem 300,* 546 F2d 1125 (CA 5, 1977). If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle. The fact that the claim may have been successfully defended by a showing of contributory negligence, lack of negligence or otherwise, is but a part of the reasonableness analysis and, therefore, subject to proof. *Moses-Ecco Co v Roscoe-Ajax Corp,* 115 US App DC 366; 320 F2d 685 (1963).[3]

If it is shown that this suit would have been successfully defended, the indemnitee will not recover. The burden of presenting evidence on this point is on the indemnitor, but the ultimate burden of persuasion remains with the indemnitee to show that the settlement was reasonable under all the circumstances.

Because of the construction statute discussed in

---

[3] Some courts would apparently forbid any inquiry into the possibility that the original suit may have been successfully defended where a tender of defense of that suit has been rejected. *See, e.g., Missouri Pacific R Co v Arkansas Oak Flooring Co,* 434 F2d 575 (CA8, 1970). We have rejected this approach because it restricts the proof under the concept of reasonableness more than is necessary to assure that the interest of both parties will be protected.

Part I of this opinion, the indemnitee must also show that the contract covers the situation. In the present case, that means that Clark must show, in addition to the reasonableness of the settlement as outlined above, that the liability was not the result of Clark's sole negligence.

The trial court was correct in submitting the case to the jury because questions of fact exist on many points. Neither side was or is entitled to prevail as a matter of law. The standard under which the case was submitted was erroneous and requires a new trial where the potential, as opposed to the actual, liability of Clark will be the issue.

## III

The disposition in Part II renders extended discussion of the evidentiary questions raised by Clark unnecessary. We mention them only to guide the trial court in the event of a retrial.

The trial court ordered references to insurance struck from both the contract between Clark and Harroun and a letter between the parties before these documents were admitted as evidence. Clark claims this evidence should have been admitted to counteract Harroun's counsel's remark in his opening statement that the case envolved the "big corporation, Clark on the one hand" and "Harroun, a small, family corporation" on the other. Clark did not object to this statement below nor does it seek reversal on that ground here. We do not condone the statement, but it does not necessarily follow that Clark would be justified in introducing evidence that Harroun was insured. The question will be controlled by MRE 411 on a retrial. See, 2 Weinstein's Evidence, ¶ 11[05], p 411-11.

Clark also objected to the presentation of expert testimony which embraced the conclusion that Clark was not negligent in this accident. The court admitted the testimony under former GCR 1963, 605 (repealed February 23, 1978, see 402 Mich cxxxiii. The matter will be controlled by MRE 702 and 704 on a retrial. We would note that a condition to admission under Rule 704 is that the evidence be otherwise admissible and, therefore, the proposed expert opinion must meet the requirements of Rule 702.

Reversed and remanded for proceedings not inconsistent with this opinion.