**PROCTOR & SCHWARTZ, INC.,**
Plaintiff-Appellant,

v.

**UNITED STATES EQUIPMENT
COMPANY, Defendant-Appellee.**

No. 77–1717.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 13, 1979.

Decided July 2, 1980.

Neill T. Peters, Fitzgerald, Young, Peters, Bruno & Bunn, Lisa Sewell DeMoss, Detroit, Mich., for plaintiff-appellant.

Allen C. Youngblood, Allen & Allen, John F. Allen, Troy, Mich., for defendant-appellee.

Before WEICK, ENGEL and JONES, Circuit Judges.

ENGEL, Circuit Judge.

In this diversity action, Proctor & Schwartz, Inc. (Proctor) filed suit against United States Equipment Company (Equipment) in the United States District Court for the Eastern District of Michigan seeking indemnity and damages for breach of contract. Specifically, Proctor claims Equipment must bear the cost of a $75,000 settlement which Proctor negotiated with an employee of U. S. Fibres, Inc., a wholly-owned subsidiary of Equipment. The employee was injured while cleaning a piece of machinery which Equipment purchased from Proctor.

## I.

On July 26, 1965, Proctor and Equipment executed a written contract for the sale of several pieces of machinery, including the "Proctor No. 679 48″ wide picker." The agreement stated that Equipment would furnish:

> The necessary guards for the exposed moving parts of the machine in accordance with the laws of the district in which the machine is to be located.

Proctor installed the machine at the Michigan plant of U. S. Fibres late in 1965 or in the first months of 1966. On February 2, 1968, Lamar Norman, an employee of Fibres, suffered serious injuries while cleaning the machine. Norman brought an action against Proctor in October, 1970, in the Wayne County Circuit Court, alleging negligence and breach of warranty. Proctor impleaded U. S. Fibres' insurer, Liberty Mutual, to indemnify it in the event Norman obtained a judgment. In addition, Proctor formally tendered the defense of the action to U. S. Fibres, but only after the suit was in trial.

Proctor and Norman settled the latter's claim for $75,000 and the suit was dismissed with prejudice. The state court also dismissed Proctor's third-party complaint against Liberty Mutual. The settlement agreement stated:

> It is further understood and agreed that the payment of said amount is not to be construed as an admission of liability upon the part of said persons, firms or corporations; liability being by him or them expressly denied.

Proctor instituted the present action against Equipment in the United States District Court on February 7, 1974, claiming it was entitled to recover from Equipment the $75,000 it paid to Norman, either on the theory of common law indemnity or because Equipment breached the contract of sale which stated it was obligated to equip the machine with the necessary safety devices. The district judge ruled against Proctor on both issues and granted summary judgment

for Equipment.[1] The trial judge reasoned that the complaint which Norman filed in the state court and which was the basis for the settlement agreement alleged only fault attributable to Proctor and provided no basis for shifting that obligation to Equipment. Moreover, he ruled that the statute of limitations had run on the contract claim.

## II.

At the outset, we observe that the trial judge did not err in dismissing the complaint insofar as it sought recovery on the basis of breach of express contract, such claim having been barred by Michigan's applicable statute of limitations.[2] In that respect, we note that the breach of the contract itself occurred at the time the equipment was installed and U. S. Fibres failed to fulfill its obligation to equip it with the necessary safety devices required under applicable law within a reasonable time. M.C.L.A. § 600.5827, M.S.A. § 27A.5827; *Cushman v. Avis*, 28 Mich.App. 294, 184 N.W.2d 299 (1971). We find no support in Michigan

law for Proctor's claim that Equipment's failure to install the safety device amounted to a continuing breach of contract.[3]

## III.

Secondly, we conclude that the district judge properly dismissed Proctor's indemnity claim premised on traditional common law principles. This theory, based on the equitable notion that a party should not pay an obligation resulting from another's wrongful action, requires that the party seeking indemnity be free from personal fault. *Dale v. Whiteman*, 388 Mich. 698, 202 N.W.2d 797 (1972). If a party who seeks indemnity is guilty of "active" causal negligence, rather than merely "passive" negligence, the action will fail. *Indemnity Ins. Co. v. Otis Elevator Co.*, 315 Mich. 393, 24 N.W.2d 104 (1946). In most instances a party entitled to indemnity under this theory is free from any personal negligence, but is vicariously liable for the negligence of another. *Prosky v. National Acme Company*, 404 F.Supp. 852, 855 (E.D.Mich.1975).

1. At the request of the plaintiff, Judge Keith subsequently reinstated the indemnity claim; after reargument, however, he again granted summary judgment for Equipment.

2. The district judge concluded UCC § 2–725, M.S.A. § 19.2725, M.C.L.A. § 440.2725 (1967), did not apply because the action was not for breach of warranty and, instead, applied the general statute of limitations for contract claims in Michigan, M.S.A. § 27A.5807, M.C.L.A. § 600.5807 (1968) (6 years). This restrictive interpretation of the UCC statute of limitations is incorrect. *Roundhouse v. Owens-Illinois Inc.*, 405 F.Supp. 868 (W.D.Mich.1975), *Natale v. Upjohn Co.*, 286 F.Supp. 37 (D.Del. 1964). UCC § 2–725 provides:

    (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to no less than 1 year but may not extend it.

    (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

The contract between the parties to this suit involved the sale of goods, making this provision applicable to the breach of contract claim. UCC § 2–102, M.S.A. § 19–2102, M.C.L.A. § 440.2102 (1967). Obviously, this shorter limitations period would also bar Proctor's contract action.

3. Michigan courts have found certain acts, such as trespass and nuisance, were continuing wrongs, but we find no authority for treating a breach of contract in the same manner. *Defnet v. City of Detroit*, 327 Mich. 254, 41 N.W.2d 539 (1950) (trespass); *Hodgeson v. Genesee County Drain Commissioner*, 52 Mich.App. 411, 217 N.W.2d 395 (1974) (nuisance). M.S.A. § 27A.5827, M.C.L.A. § 600.5827 (1968) provides:

    Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

Thus, although the damage may have occurred within six years of Proctor's lawsuit, the breach occurred within a reasonable time after U.S. Equipment received the machine and failed to equip it with the requisite safety devices.

Norman's suit against Proctor never proceeded to trial and thus, in considering the indemnity claim, we must look to the theories upon which he sought recovery from Proctor. *See, e. g., Hill v. Sullivan Equipment Co.,* 86 Mich.App. 693, 273 N.W.2d 527 (1978). In count one, Norman claimed Proctor "was negligent in the design, manufacture and sale" of the machine.[4] This count alleges fault attributable solely to Proctor which would preclude indemnity if Norman had recovered on this theory. *Husted v. Consumers Power Company,* 376 Mich. 41, 135 N.W.2d 370 (1965).

In addition to the negligence count, Norman alleged Proctor breached its warranty, "that said machine was of merchantable quality, was reasonably fit for use for the purposes for which it was designed and constructed and that it could be used with reasonable safety." Specifically, the employee alleged the machine had no adequate warnings to alert the operator of possible dangers, was defectively designed, and lacked proper safety devices.[5] Each aspect of this count complains of conduct on Proctor's part, which precludes indemnity on

traditional principles. *Minster Machine Co. v. Diamond Stamping Co.,* 72 Mich.App. 58, 248 N.W.2d 676 (1976); *Prosky v. National Acme Company,* 404 F.Supp. 852 (E.D.Mich. 1975) (applying Michigan law). *See also Burke v. Sky Climber, Inc.,* 57 Ill.2d 542, 316 N.E.2d 516 (1974).

## IV.

Michigan, however, appears to recognize an area of indemnity liability based upon an implied contract. *Dale v. Whiteman,* 388 Mich. 698, 202 N.W.2d 797 (1972); *Hill v. Sullivan Equipment Co.,* 86 Mich.App. 693, 273 N.W.2d 527 (1978). This second theory of indemnity requires an undertaking, either orally or in writing, by the party from whom indemnity is sought, "to perform a certain service or furnish a product to the other party." *Dale v. Whiteman,* 388 Mich. at 705, 202 N.W.2d at 800. We conclude that Proctor pleaded facts which raise a question whether the parties to the sales agreement created an implied agreement to indemnify, which precluded the granting of summary judgment.

---

4. The negligence claim stated, in part:

The defendant was negligent in the design, manufacture and sale of said machine in that:

(a) The defendant knew and in the exercise of due care should have known that persons would work on and about said machine without being familiar with the workings of said machine or the nature of the cylinders in said machine.

(b) The defendant located said door at a point where one reaching through said door was likely to come in contact with the cylindrical roller.

(c) Defendant failed to attach to said machine adequate warning, sufficient to bring to the attention of persons working on or about said machine, the dangers of opening said door and reaching in while the machine was running.

(d) Defendant failed to equip said door with an interlock which would prevent its being opened while said machine was in operation.

(e) Defendant failed to provide notice or warning of the condition of said rollers sufficient to warn operators of the danger.

(f) Defendant failed to provide any safety device which would prevent a workman's hands from contacting the rollers when said access door was open.

5. Norman's breach of warranty allegations stated, in part:

The defendant breached said warranties in that said machine was not of merchantable quality; was not reasonably fit for use for the purposes for which it was designed and constructed and could not be used with reasonable safety by one such as this plaintiff for the reasons that:

(a) Said access door was so located that an operator who opened the access door could contact the tooth-covered roller.

(b) There was no adequate warning attached to said machine to bring to the attention of the operator the existence of the highly dangerous roller therein.

(c) There was no adequate warning against opening said access door and reaching into said duct while the machine was operating.

(d) There was no device to prevent opening of said access door while said machine was in operation, nor was there any device to prevent a person's hand from being inserted through said door and contacting the roller.

(5) That plaintiff's injuries as aforesaid were a direct and proximate result of the defendant's breaches of warranty.

The contract between Proctor and Equipment provided that Equipment was to furnish and install necessary guards for the exposed moving parts of the machine in accordance with the laws of the district in which the machine was to be installed. The logic of such a provision is apparent. Because the purchaser of the machinery would be in a better position to know local law and exactly how the machinery was to be used, the parties agreed that the purchaser should install the necessary safety devices.

■ Although Michigan law is not entirely clear, we conclude Michigan courts recognize an implied agreement as an identifiably separate area of indemnity law relating to the allocation of responsibility for loss. Michigan's Supreme Court noted this legal theory in Dale v. Whiteman, 388 Mich. 698, 202 N.W.2d 797 (1972), and a majority of a panel of the Michigan Court of Appeals accepted that notation as an adoption of the theory in Michigan. Hill v. Sullivan Equipment, 86 Mich.App. 693, 697–98, 273 N.W.2d 527 (1978). See also Diamond State Telephone Co. v. University of Delaware, 269 A.2d 52 (Del.1970). In Hill, the court of appeals, under circumstances somewhat similar to those here, concluded that while common law indemnity principles were inapplicable because the complaint against the manufacturer alleged active negligence, the company stated a cause of action on the basis of an implied contract of indemnity. The complaint in the indemnity action alleged that the purchaser of the machine unqualifiedly rejected a proposed protective cover for the machine and advised the manufacturer that it would be inaccessible to workers while in operation. A majority of the panel of the court of appeals concluded that these pleaded facts fell within the implied contractual theory of indemnity noted in Dale v. Whiteman, supra. Dissenting, Judge Walsh argued that any theory of indemnity is subject to the traditional caveat that the indemnitee be without any fault. The court in Dale v. Whiteman discussed this requirement under traditional theories of indemnity:

It is a well-recognized rule that an implied contract of indemnity arises in favor of a person who without any fault on his part is exposed to liability and compelled to pay damages on account of the negligence or tortious act of another, the former having a right of action against the latter for indemnity * * *. (42 C.J.S. Indemnity § 21 p. 596.) (Emphasis added).

202 N.W.2d at 800, by Judge Walsh in Hill, supra, 86 Mich.App. at 698–99, 273 N.W.2d 527. We do not, however, read the quoted language as posing an invariable bar where the act or omission is one which, as between two parties, was specifically undertaken by one of them.

■ In its complaint, Proctor alleged Equipment agreed to install the requisite safety devices on the machine which caused Norman's injuries. Thus, it pleaded facts which require a remand on this theory of indemnity.[6] We also note, however, that established Michigan law provides that a party is not entitled to indemnity if it was not, in fact, liable for the judgment in the underlying action. Knickerbocker v. Wilcox, 83 Mich. 200, 47 N.W. 123 (1890). See also Tankrederiet Gefion A/S v. Hyman-Michaels Company, 406 F.2d 1039 (6th Cir. 1969). The party from whom indemnity is sought may challenge the existence and the amount of liability adjudicated in the prior action if it was not given notice of that suit. Grand Rapids Lumber Co. v. Blair, 190 Mich. 518, 157 N.W.2d 29 (1916).

The instant case differs somewhat from the precedents cited above because Proctor negotiated a settlement with the employee in the underlying action. Proctor's liability and the damages Norman might have recovered were not determined in a trial. Michigan courts, of course, encourage the settlement of lawsuits. Hayes v. Coleman, 338 Mich. 371, 61 N.W.2d 634 (1953). In Trim v. Clark Equipment Co., 87 Mich.App.

**6.** The applicable limitations period for this contract, if it exists, is six years. M.C.L.A. § 600.-5807(8), M.S.A. § 27A.5807(8) (1968). The breach occurred when Equipment failed to indemnify Proctor.

270, 274 N.W.2d 33 (1979), the Michigan Court of Appeals reiterated this policy in the context of an indemnity action. The court was asked to decide the effect of a settlement of the underlying suit in a subsequent action for indemnity. The court ruled that where a party seeking indemnity notifies the indemnitor of the underlying action, the indemnitee "need show only its potential, as opposed [to] its actual, liability" in the first suit. 87 Mich.App. at 277, 274 N.W.2d 33. While we assume that this is good law, generally, we also note that Proctor formally tendered the defense of the action on July 5, 1973, five days after the beginning of the trial and Norman and Proctor settled the suit a month later. We cannot say, on the limited record before this court, that this tender constituted sufficient notice to entitle Proctor to the lower standard of proof announced in *Trim*.[7] On retrial, additional evidence regarding the circumstances on the notice may furnish some legal justification which will excuse the tardiness of the tender. Absent such evidence, however, we conclude that there must be reasonable notice to satisfy *Trim* and notice in the middle of trial, as a matter of law, is not reasonable notice.

### V.

To guide the trial judge on remand, we summarize the applicable Michigan law. Although Proctor cannot recover for U.S. Equipment's breach of their sales agreement or on traditional principles of indemnity, Michigan recognizes an implied contract, arising from the promise to perform an act or furnish a product, as a basis for indemnity. We conclude Proctor has pleaded facts which preclude summary judgment on this theory and we remand for consideration of the claim.

In addition, we note that indemnity will not be in favor of a party that pays a judgment or settles a lawsuit unnecessarily. Thus, Proctor must prove it was, in fact, liable to Norman. Specifically, Proctor must show its liability was a result of the lack of adequate safety devices on the machine which the parties agreed Equipment would furnish.

In its defense, Equipment may offer evidence that:

1. Norman's own conduct was a bar to his recovery from Proctor.

2. Proctor was not in any event liable under Michigan law to Norman, had the issues in the original litigation been tried to conclusion.

3. Proctor, though guilty of an act or omission which would render it liable but entitled to indemnification against U.S. Equipment, was also liable on other theories spelled out in Norman's complaint and for which there was no implied agreement of indemnity by U.S. Equipment.

4. The amount of the settlement was not reasonable.

For the reasons discussed above, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

---

7. In *Trim*, the defendant-indemnitee notified the indemnitor immediately of the pending action. In addition, the defendant informed the indemnitor of the impending settlement.