# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3999

_____

| | | |
|---|---|---|
| Pinnacle Pizza Company, Inc., a South Dakota Corporation, | * * * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Little Caesar Enterprises, Inc., a Michigan Corporation; LC Trademarks, Inc., a Michigan Corporation; Ilitch Holdings, Inc., a Michigan Corporation, | * * * * * | |
| Appellees. | * | |

_____

Submitted: October 22, 2009
Filed:  March 22, 2010

_____

Before RILEY, SMITH, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Pinnacle Pizza Company, Inc. ("Pinnacle"), a franchisee, brought suit against Little Caesar Enterprises, Inc. (LCE), the franchisor, alleging, inter alia, breach of the corporation's franchise agreement and violation of the South Dakota Franchise Act (SDFA). Pinnacle also sought to cancel LCE's federal trademark for the phrase "Hot-N-Ready." LCE counterclaimed, alleging breach of the franchise agreement on the

part of Pinnacle. The district court[1] granted LCE summary judgment on all claims. On appeal, Pinnacle argues that the district court erred in granting LCE's motions for summary judgment. Specifically, Pinnacle argues that the district court erred in finding that (1) LCE did not breach the franchise agreement; (2) LCE did not violate the SDFA; (3) LCE did not obtain its federal trademark through fraudulent means; and (4) Pinnacle did breach the franchise agreement by challenging LCE's trademark application. We affirm.

## I. *Background*

Pinnacle is a South Dakota corporation formed in 1991 by Jim Fischer and Mike Nichols to own and operate Little Caesar's pizza franchises in Sioux Falls, South Dakota. Pinnacle entered into a franchise agreement with LCE, LC Trademarks, Inc., and Ilitch Holdings, Inc. for each franchise store.[2] The three franchise agreements are substantially similar and comprise the contract at issue.

The relevant portion of the franchise agreement governs "Advertising." Section XII.D states:

> Franchise Owner, at its sole expense, may utilize LITTLE CAESAR's television and radio advertising materials (for its sole benefit or jointly with other LITTLE CAESAR Franchisees), by dealing directly with LITTLE CAESAR's advertising agency. LITTLE CAESAR may not use the *original advertising materials* created by Franchise Owner without its prior written consent.

(emphasis added).

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

[2]LCE is incorporated as a Michigan corporation.

The parties dispute the right to use the phrase "Hot-N-Ready" in pizza restaurant advertising. Pinnacle asserts that Fischer coined the phrase after receiving inspiration following a LCE convention in Las Vegas. This concept and phrase, Pinnacle asserts, turned around Pinnacle's and ultimately LCE's economic fortunes. Pinnacle's stores, consistent with LCE franchise and company stores nationwide, struggled financially during the mid-1990s. To counter this downturn, Pinnacle, via Fischer, began a new advertising strategy that guaranteed customers a hot, medium pepperoni pizza for $4 within five minutes of request every Tuesday. Pinnacle first advertised this offer on May 7, 1997, in a newspaper advertisement coupled with the phrase "Hot N' Ready."[3] Pinnacle asserts that the "Hot-N-Ready" concept was extremely successful and rescued its business.

Pinnacle contends that other LCE franchise stores began to copy the "Hot-N-Ready" concept after observing Pinnacle's success. Pinnacle avers that LCE breached the franchise agreement and wrongfully used Pinnacle's "original advertising materials" without its consent.

LCE, on the other hand, claims that the origin of the "Hot-N-Ready" concept predates Fischer's asserted inspiration. LCE represents that beginning in 1992, it encouraged franchisees to hold "Customer Appreciation Days" once per quarter, during which ready-for-pick-up pizzas were sold at a discounted price. Although not specifically called "Hot-N-Ready," these promotions embodied the same components as Pinnacle's later promotion. LCE argues that Fischer derived his "Hot-N-Ready" concept by adapting portions of sales presentations made by LCE, as well as other franchisees, that contained components of the concept.

---

[3]Pinnacle claims its original concept was the phrase "Hot N' Ready." LCE later obtained a federal trademark for the words "Hot-N-Ready." The phrase is referred to herein as "Hot-N-Ready."

Neither party disputes that Fischer and Pinnacle readily shared this "Hot-N-Ready" concept with other franchisees and in fact encouraged its use by certain franchisees. Pinnacle neither claimed ownership of the concept when it first shared the phrase nor restricted those franchisees with whom it shared the idea from further spreading the phrase. For instance, Scott Stewart, an LCE franchisee, began sharing "Hot-N-Ready" success stories with LCE and other franchisees in late 1997. Stewart wrote a September 25, 1997 memorandum to LCE describing the "Hot-N-Ready" program as "the best local promo we have done in a long time." Subsequently, LCE distributed Stewart's memo in a booklet of marketing ideas to all franchisees. Stewart also gave a presentation regarding the "Hot-N-Ready" concept in October 1997 at a LCE workshop in Nashville, Tennessee.

Following Stewart's presentation, LCE continued to promote the "Hot-N-Ready" idea to all of its franchisees. By 1999, LCE provided all franchisees with advertising materials which featured the "Hot-N-Ready" phrase. In June of 2000, LCE sent franchisees, including Pinnacle, a "Hot-N-Ready" implementation guide. In late 2000, a LCE executive visited Fischer in Sioux Falls and told Fischer that LCE planned on turning the "Hot-N-Ready" concept into a national program.

The program was unquestionably successful, and according to Pinnacle, transformed LCE from a company loaded with $200 million in debt into one brimming with $200 million in assets. In 2002, LCE filed an application with the United States Patent and Trademark Office (USPTO) to register the phrase "Hot-N-Ready" as a trademark. In that application, LCE indicated that the date of first use of the mark was May 6, 1997—the date Pinnacle submitted its first newspaper advertisement for "Hot-N-Ready" (the advertisement was actually published the following day). LCE ultimately obtained a federal service mark for "Hot-N-Ready."

Pinnacle filed suit against LCE alleging a variety of claims stemming from LCE's use of the "Hot-N-Ready" concept. Pinnacle asserted state law claims for (1)

breach of contract (for violation of the franchise agreement); (2) violation of the SDFA (because Pinnacle argued that LCE engaged in "unfair and inequitable" conduct through its use of the "Hot-N-Ready" phrase); (3) breach of fiduciary duty and confidential relationship; and (4) violation of South Dakota trademark law. Finally, Pinnacle asserted a federal claim to cancel LCE's registered trademark with the USPTO. LCE filed a counterclaim for breach of contract, arguing that by challenging the validity of LCE's registered trademark, Pinnacle breached the franchise agreement.

The district court granted summary judgment in favor of LCE on a number of Pinnacle's claims. First, the court granted LCE's motion for summary judgment against Pinnacle's breach of contract claim. The court did so after determining that "original advertising materials" in the franchise agreement unambiguously refers to only the tangible advertisements that Pinnacle created, not the underlying concepts or ideas that such advertisements promote, or the slogans contained in such advertisements that describe the underlying concepts.

Because the district court found that LCE did not breach its contract through the use of the "Hot-N-Ready" phrase, the court also found that LCE did not breach its obligations under the franchise agreement. Specifically, the district court found that LCE did not act in an "unfair and inequitable" manner under the SDFA and thus granted LCE's motion for summary judgment on Pinnacle's claim under the SDFA.

The district court also granted LCE's motion for summary judgment to dismiss Pinnacle's claim to cancel LCE's trademark application because the court found that Pinnacle did not set forth any evidence that LCE knowingly made false, material representations of fact in connection with its attempt to trademark the phrase "Hot-N-Ready."

Next, the district court awarded LCE nominal damages and denied Pinnacle's motion for summary judgment to dismiss LCE's counterclaim for breach of contract.

The district court found that the franchise agreement contained a covenant not to sue that applies to any contest to the validity or ownership of LCE's proprietary marks, whether made in good faith or in bad faith. The district court found that the undisputed facts showed that under these terms, Pinnacle breached the franchise agreement.

Finally, LCE alternatively moved for summary judgment on several of Pinnacle's claims, asserting that they are barred by the applicable statutes of limitations. The district court held that LCE's alleged actions constituted a series of repeated breaches and that any breaches of contract or the SDFA occurring within the limitations period are actionable. Thus, assuming arguendo that LCE did breach the franchise agreement, the district court held that any such breach after October 25, 1998, would be a valid claim.

## II. *Discussion*

On appeal,[4] Pinnacle argues that the district court erred in finding that (1) LCE did not breach the franchise agreement; (2) LCE did not violate the SDFA; (3) LCE did not obtain its federal trademark through fraudulent means; and (4) Pinnacle did breach the franchise agreement by challenging LCE's trademark application. Because all issues involve the granting or denying of summary judgment, we review the district court's rulings de novo, applying the same standard as the district court. *Mehrkens v. Blank*, 556 F.3d 865, 868 (8th Cir. 2009).

---

[4]Although not at issue in this appeal, the district court also granted LCE's motion for summary judgment to dismiss Pinnacle's breach of fiduciary duty claim, finding that the parties expressly disclaimed the existence of a fiduciary relationship and that such a relationship is not created by operation of law. The district court also granted summary judgment against Pinnacle on its claim under South Dakota trademark law because this law—to the extent that it is applicable to the conduct alleged by Pinnacle's claims—cannot extend liability to "extraterritorial conduct" and Pinnacle did not allege that any of the breaches occurred in South Dakota. Pinnacle neither challenges the district court's rulings on Pinnacle's breach of fiduciary duty claim nor its claim for violation of South Dakota trademark law.

A. *Statutes of Limitations*

1. *Breach of Contract*

We choose to first address a relevant and raised threshold question before reviewing Pinnacle's specific appellate claims: Do the applicable statutes of limitations bar Pinnacle from making claims for either breach of contract or breach of the SDFA? More specifically, did LCE's alleged improper use of the phrase "Hot-N-Ready" give rise to multiple actionable breaches, or did LCE's alleged improper use consist of one continuing breach that began prior to October 25, 1998? If multiple breaches occurred, the statute of limitations would not bar all of Pinnacle's claims. But one continuing breach occurring prior to October 25, 1998, would not reset the statute with each subsequent use of "Hot-N-Ready" and would therefore time-bar all of Pinnacle's claims in this case.

"A federal court exercising diversity jurisdiction is required to apply the law of the forum when ruling on statutes of limitations." *Nettles v. Am. Tel. & Tel. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995). The forum state in this case, South Dakota, regards statutes of limitations as procedural. *Lyons v. Lederle Labs.*, 440 N.W.2d 769, 770 (S.D. 1989). Therefore we must apply the South Dakota statute of limitations in resolving this case. *Nettles*, 55 F.3d at 1362. Under South Dakota law, the statute of limitations for Pinnacle's breach of contract claim is six years. S.D. Codified Laws § 15-2-13(1). However, because the contract claim itself is governed by Michigan law, we must analyze the *timing* of the alleged breach using Michigan law. *See Pinnacle Pizza Co., Inc. v. Little Caesar Enterprises, Inc.*, 395 F. Supp. 2d 891, 897–98 (D.S.D. 2005).[5] Therefore, the statute of limitations was six years pursuant to South Dakota

---

[5]The district court completed a thorough analysis on this choice-of-law issue, which neither party disputes. We therefore accept the district court's conclusion that Michigan law must govern the timing of any alleged breach.

law, and the timing of the alleged breach will be analyzed using Michigan law.[6] Under Michigan law, a breach of contract claim accrues when the breach occurs—even if the plaintiff is unaware of the breach. Mich. Comp. Laws § 600.5827; *Harris v. City of Allen Park*, 483 N.W.2d 434, 436 (Mich. Ct. App. 1992). Pinnacle filed its original complaint on October 25, 2004, and therefore to advance this case, there must be an actionable breach within six years of that filing, that is, subsequent to October 25, 1998.

Several facts surrounding the birth of the "Hot-N-Ready" concept are not in dispute. Fischer first used the phrase "Hot-N-Ready" promoting his store in radio and newspaper advertisements on May 7, 1997. Fischer then shared the idea of "Hot-N-Ready" with fellow franchisees Stewart and Derek Kothe. Later that year, LCE held a series of regional workshops. In preparation for these workshops, LCE asked franchisees to share information about successful sales promotions. On September 25, 1997, Stewart wrote a memo to LCE describing a promotion in which he "sell[s] the 12[-inch] pepperoni pizza for $4.00. . . . We call it the Hot and Ready. We guarantee it ready in 5 minutes or the first 2 are Free." This memo was included in a booklet containing marketing ideas that was mailed to every LCE franchisee and distributed to all LCE franchisees at the workshops. On October 2 or 3, 1997, Stewart made a presentation on the "Hot-N-Ready" concept to approximately 150 franchisees at a Nashville, Tennessee workshop.

LCE thereafter began actively marketing the "Hot-N-Ready" concept to its franchisees. LCE produced a marketing presentation that included a slide containing the phrase "Hot and Ready $4 Medium Pepperoni Pizza." LCE conducted workshops for franchisees containing this presentation and slide throughout 1997 and 1998. During this time, as part of its regular business practice, LCE also conducted regular

---

[6]Michigan law also establishes a six-year statute of limitations for breach of contract claims. Mich. Comp. Laws § 600.5807(8).

in-store visits to monitor various franchisees . LCE produced evidence of nine letters sent to different LCE franchisees between October 15, 1997, and September 15, 1998, summarizing its visit to each franchisee. These letters show that, at that time, LCE encouraged these franchisees to either begin using or continue using the "Hot-N-Ready" concept in their store marketing and advertising. For example, on October 15, 1997, Jim Dexter, a LCE franchise coordinator for the West region, wrote a letter to a Bismarck, North Dakota franchisee, remarking, "As we discussed, consider trying the Tuesday night Hot-N-Ready. I think a majority of your stores are . . . capable of jumping right into this." On December 10, 1997, Joedy Coleman, LCE director of operations for the Midwest region, documented in a letter to a Tallahassee franchisee that "[y]ou are trying 'Shaker Boards' and 'Hot and Ready' with some success, this will help with attracting attention to the stores. . . . Make this a weekly event. . . ." Joe Gaitan, also a franchise coordinator for the West region, suggested in a letter dated June 26, 1998, that if a Washington state franchisee would "give the Hot-n-Ready Tuesday a try it will help increase sales on the slower days of the week."

Pinnacle does not dispute that LCE first used the phrase "Hot-N-Ready" prior to October 25, 1998, and that the examples cited above would constitute a breach of the franchise agreement under Pinnacle's theory. Rather, Pinnacle asserts that the contractual duty set forth in the franchise agreement is a continuing duty, and therefore even if it was first breached prior to October 25, 1998, each subsequent use of the "original advertising materials" resulted in a separate and actionable breach for purposes of the statute of limitations. LCE, meanwhile, claims the accrual date for the single, continuing breach of the franchise agreement occurred sometime before October 25, 1998.[7]

---

[7]For purposes of the analysis in this section, and this section only, we will assume that LCE did in fact breach the franchise agreement when it used the phrase "Hot-N-Ready."

Pinnacle relies upon *H.J. Tucker & Associates, Inc. v. Allied Chucker & Engineering Co.* to support its theory that repeated breaches of a contract can give rise to separate claims for each breach. In *Tucker*, the plaintiff sought damages from nonpayment of certain commissions due under contract. 595 N.W.2d 176, 179 (Mich. Ct. App. 1999). The contract called for the plaintiff to receive a commission each time he referred potential customers to the defendant. *Id.* The plaintiff sought payment for commissions generated from each of the referrals—some occurring outside of the limitations period and some within the limitations period. *Id.* at 180. The court concluded that an employment contract that paid a commission-based salary was periodic in nature and that the defendant's continuing non-payment constituted multiple, independent breaches of contract. *Id.* In holding that the plaintiff could recover for breaches inside the limitations period but not for breaches outside of it, the court stated that

> [a]lthough defendant asserts that plaintiff's claim accrued in 1986, more than six years before plaintiff filed its complaint, and thus the entire breach of contract action was time-barred, we conclude that claims for payments due under the contract between the parties are analogous to claims for payments under an installment contract, claims for alimony payments, or claims for monthly pension payments, all of which accrue as each payment becomes due. In the present case, the commissions earned by plaintiff were separately computed, were to be paid monthly, and were of a periodic nature.

*Id.* (internal citations omitted). The court was then able to separately compute the damages the plaintiff suffered from the contract breaches both inside and outside of the limitations period and compensate him accordingly. *Id.*

Other Michigan courts have similarly held that only contracts that create duties occurring and resetting monthly are analogous to installment contracts and can constitute separate breaches. In *Lube USA Inc. v. Michigan Manufacturers Service Inc.*, a manufacturer entered into a contract with a distributor, in which the distributor

would be the exclusive distributor for the manufacturer's products. No. 07-cv-14284, 2009 WL 2777332 at *1 (E.D. Mich. Aug. 27, 2009) (slip op.). The manufacturer then made direct sales in violation of the contract, and with evidence of multiple examples of such direct sales, when the first breach occurred was an issue in the case. *Id*. The court held that the statute of limitations barred all of the distributor's claims because

> [t]he pivotal date for statute of limitations purposes is the date of the breach, and later transactions that [the distributor] may point to are not sufficient to restart the limitations period. This contract does not fall within the narrow species of contract which permit discrete independent breaches to reset the statute of limitations.

*Id*. at *7 (internal citations omitted). The *Lube* court also pointed out that the distributor was aware of the manufacturer's breach well before the start of the limitations period. *Id*.

A Michigan statute-of-limitations case not involving installment contracts is *Proctor & Schwartz, Inc. v. U.S. Equipment Co.*, 624 F.2d 771 (6th Cir. 1980). In *Proctor & Schwartz*, a company contracted with a business to install a machine and all necessary safety parts. *Id*. at 772. Two years later a person was injured because a necessary safety device was not installed. *Id*. The court rejected the breach of contract claim under the statute of limitations. *Id*. at 773. The court found that the original breach occurred when the company installed the machine without the required safety devices and that it was not a repeated breach for every day that the safety device was not installed. *Id*. Key language comes in a footnote, in which the court declined to extend a "continuing wrong" theory to contract cases:

> Michigan courts have found certain acts, such as trespass and nuisance, were continuing wrongs, but we find no authority for treating a breach of contract in the same manner. M.S.A. § 27A.5827, M.C.L.A § 600.5827 (1968) provides:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues.

*Id.* at n.3 (internal citation omitted).

Michigan courts further defined that state's notion of a continuing wrong in *Blazer Foods, Inc. v. Restaurant Properties, Inc.*, 673 N.W.2d 805 (Mich. Ct. App. 2003). In *Blazer*,[8] a franchisee sued the franchisor, claiming that the franchisor failed to provide adequate training, delayed site approval, and improperly changed menu items. *Id.* at 808. The franchisor's first failure came outside the limitations period, but the parties continued a relationship, and the franchisor continued to neglect to fulfill its duties under the contract. *Id.* The franchisee claimed that the franchisor's "continuing wrong" extended the limitations period. *Id.* at 809. The court rejected this theory, noting that there are "no cases extending the continuing wrong . . . theor[y] to a situation in which a party to a contract fails to perform adequately under the contract." *Id.* at 812. *Blazer* also interpreted *Tucker*, noting that

> the *H[.]J[.] Tucker* Court made clear that each improper payment at issue in *H[.]J[.] Tucker* constituted a separate breach that was *not* tied to earlier breaches falling outside the limitations period. The Court essentially found that there were repeated breaches that gave rise to separate claims of breach of contract, each of which arose, accrued, and became extinguished separately. The plaintiff could recover only for those breaches occurring within the limitations period.

*Id.* at 811 (internal citations omitted).

Here, Pinnacle claims that LCE made repeated breaches and that any breach inside the limitations period (but not breaches outside the period) is actionable—the

---

[8]We note that this case, coincidentally, involves the "Hot 'N Now" restaurant chain.

exact argument that the *Blazer* court did not consider. The district court considered Pinnacle's argument and ruled that every LCE use of the phrase "Hot-N-Ready" constituted an individual breach, meaning that those within the statute of limitations are thus actionable. However, upon review, we conclude that Pinnacle's breach-of-contract claims are more analogous to the claims in *Blazer* than the installment claims in *Tucker.* We note that Pinnacle is not claiming that events outside the limitations period should be saved by the "continuing wrong" theory.

In the present case, for Pinnacle's reliance on *Tucker* to be effective, we must conclude that the franchise agreement is analogous to an installment contract. We do not. We hold that franchise agreements restricting a franchisor from using a franchisee's "original advertising materials" are materially different from an installment or commission contract, and *Tucker* is thus distinguishable. In *Tucker*, the plaintiff sought payment for a series of individual and discrete referrals. Unlike the computations the court was able to complete in *Tucker*, it would be wholly impracticable to separately compute damages for each breach by LCE, as the advertising campaign by LCE was ultimately ubiquitous and national in nature.

Additionally, in *Tucker* the defendant's multiple breaches had no relation to one another. Here, LCE first used "Hot-N-Ready" in 1997 and then continued to use the phrase with no interruption. LCE never changed its position with regard to Pinnacle during the period in question, and the entire breach is related to the single phrase, "Hot-N-Ready." Therefore, the alleged "breaches" are all related to the single use of the phrase. Unlike an installment contract, which pays fees that are calculated and reset periodically, and therefore creates a duty that is reset periodically, LCE owed one relevant duty toward Pinnacle—do not use the "original advertising materials" created by Pinnacle. Once breached, nothing reset this duty. *Tucker* and the installment contract cases like it involve separate and distinct duties for each installment and separate breaches for which specific recovery may be calculated. LCE

-13-

had one duty. Each subsequent use of "Hot-N-Ready" is merely more evidence of the original breach but not a new, distinct breach.

Here, as in *Lube*, Pinnacle was aware that LCE was using the phrase "Hot-N-Ready" before October 25, 1998. LCE never cured its breach and never made a separate, material breach of the contract apart from its use of "Hot-N-Ready" that would give rise to a new cause of action. LCE did not use any "original advertising materials" other than "Hot-N-Ready" and never indicated to Pinnacle that it would cease using the phrase once it learned of the phrase's existence. We thus conclude that if LCE breached the franchise agreement, it did so once—the first time LCE appropriated "Hot-N-Ready." Pinnacle's action for breach of contract, therefore, accrued when LCE allegedly materially breached the contract. This breach would have occurred before October 25, 1998. "'The fabric of the relationship once rent is not torn anew with each added use or disclosure, although the damage suffered may thereby be aggravated.'" *Shatterproof Glass Corp. v. Guardian Glass Co.*, 322 F. Supp. 854, 870 (E.D. Mich. 1970) (quoting *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 293 (9th Cir. 1969)). "'The cause of action arises but once. . . .'" *Id.*

We find that recovery for repeated breaches is only appropriate in specific circumstances not present in this case. We therefore hold that if LCE breached the contract, it made a single breach of the franchise agreement in 1997. Pinnacle's breach of contract claims are thus time-barred.

## 2. *South Dakota Franchise Act*

The SDFA does not include a statute of limitations provision. Therefore, we will apply the six-year period provided in South Dakota Codified Laws § 15-2-13(2), as this is an "action upon a liability created by statute other than a penalty or forfeiture. . . ." Pinnacle's SDFA claim is premised on the same facts as its contract

claim, and thus, for the same reasons discussed in Section II.A.1, Pinnacle's claim under the SDFA is also barred by the applicable statute of limitations.

## B. *LCE's Federal Trademark*

Because we find that Pinnacle's breach-of-contract claims run afoul of the statute of limitations and that its SDFA claim accrued more than six years from the time of LCE's alleged breach, we need not decide whether LCE actually breached the franchise agreement or violated the SDFA. We must, however, consider Pinnacle's other issues on appeal.

Pinnacle seeks to cancel LCE's trademark on the phrase "Hot-N-Ready," asserting that the trademark was registered in bad faith. Pinnacle argues that LCE's admission that it used the same date on which Pinnacle first employed the phrase in LCE's trademark registration application shows fraud. Now, on appeal, Pinnacle also asserts that even without a showing of bad faith, Pinnacle has the power to cancel the trademark because Pinnacle has shown evidence of LCE's inequitable conduct under the franchise agreement. Pinnacle alternatively argues that irrespective of its rights to cancel the mark, the issue should not have been decided on summary judgment because LCE's intent was at issue, and summary judgment is not appropriate to resolve issues involving intent.

LCE responds that Pinnacle has not met the high standard required to demonstrate fraud and bad faith. LCE contends that it properly used the date because federal law and the franchise agreement establish that LCE owned the phrase on the date of use by a franchisee. LCE also submits that Pinnacle did not meet its burden to bring forward evidence of fraudulent intent to avoid summary judgment.

Pinnacle relies primarily on LCE's use of May 6, 1997, as the date of its first use of the phrase in its trademark application. This date also happens to be the date that Pinnacle first used the phrase. Pinnacle alleges that this proves that LCE

registered the mark in bad faith. A petition to cancel a registration for a federal trademark may be filed "[a]t any time if the registered mark['s] . . . registration was obtained fraudulently. . . ." 15 U.S.C. § 1064(3). "Cancellation [of a fraudulently procured trademark registration] is a discretionary matter for the district court." *Gilbert/Robinson, Inc. v. Carrie Beverage-Mo., Inc.*, 989 F.2d 985, 993 (8th Cir. 1993). But to succeed in its trademark cancellation claim, Pinnacle must prove fraud on the part of LCE by clear and convincing evidence. *Allen Homes, Inc. v. Weersing*, 510 F.2d 360, 362 (8th Cir. 1975).

The franchise agreement, however, expressly authorizes LCE's actions. LCE's acts were not deceptive but instead were open and consistent with the contract entered into by LCE and Pinnacle. According to the franchise agreement, the rights in the "Hot-N-Ready" phrase and the goodwill that inures as a result of the use of the phrase became the property of LCE upon its use by the franchisee. Section V.B of the franchise agreement states:

> Franchise Owner expressly acknowledges that any and all goodwill associated with said Proprietary Marks, including any goodwill which might be deemed to have arisen or to arise in the future through the activities of any Licensee of LITTLE CAESAR, inures directly and exclusively to the benefit of LITTLE CAESAR.

In turn, 15 U.S.C. § 1055 provides:

> Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public.

When read in combination, § 1055 and the franchise agreement indicate that LCE's use of May 6, 1997—the date of first use by Pinnacle—on LCE's trademark

application is not fraudulent or unreasonable. The relevant sections make clear that use of such marks inure to LCE upon Pinnacle's use. Thus, LCE had reason to believe, notwithstanding Pinnacle's assertions to the contrary, that it could properly trademark the phrase "Hot-N-Ready." Pinnacle presented no other evidence to show bad faith on LCE's part.

Pinnacle alternatively argues that it has broad rights under the Lanham Act, specifically 15 U.S.C. § 1065, which provides that an application to cancel a trademark may be filed when "the use of a mark registered on the principal register infringes a valid right acquired under the law of any State." However, Pinnacle did not present this argument below. Count VIII of Pinnacle's Second Amended Complaint, the only count involving trademark cancellation, states that "LCE . . . illegitimately obtained registered rights to this mark by negotiating in bad faith to acquire the registration of the mark . . . . " The same count states that "LCE has . . . acquired in bad faith the rights to a federally registered mark despite knowing that [Pinnacle] has senior rights based on first use and a contractual property right, both of which impedes a good faith acquisition of the mark." Pinnacle's complaint reflects that the district court examined only an argument that LCE obtained the trademark in bad faith."Ordinarily, we do not consider an argument raised for the first time on appeal." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002).

Finally, Pinnacle argues that its trademark cancellation claim should survive summary judgment because the district court was required to make a determination of LCE's intent when it submitted its trademark application. Pinnacle is correct that "[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir. 1976). However, in this case, "[t]he party seeking cancellation for fraudulent procurement 'must prove the alleged fraud by clear and convincing evidence.'" *3M Co. v. Intertape Polymer Group, Inc.*, 423 F. Supp. 2d 958, 962 (D. Minn. 2006) (quoting *L.D. Kichler Co. v. Davoil,*

*Inc.*, 192 F.3d 1349, 1351 (Fed. Cir. 1999)). "[D]isposition by summary judgment may still be appropriate if the party in opposition to the motion has adduced no evidence whatsoever of the requisite intent to defraud." *Demerath Land Co. v. Sparr*, 48 F.3d 353, 355 (8th Cir. 1995). "The mere labelling [sic] of [LCE's] representations as fraudulent does not make them so without some evidence to support that assertion." *Id.*

Pinnacle failed to show any evidence of LCE's alleged fraudulent intent beyond its own assertions. Viewing the facts in the light most favorable to Pinnacle, LCE knew Pinnacle believed that it had rights to the phrase "Hot-N-Ready" when LCE submitted its trademark application. This fact alone, however, is not sufficient to show bad faith, and Pinnacle has shown no more. The franchise agreement and relevant statute vested in LCE rights to the phrase upon Pinnacle's use. We conclude that Pinnacle can prove no fraud in LCE's trademark application.

We hold that the district court did not err in denying Pinnacle's claim for cancellation of LCE's federal trademark.

C. *Pinnacle's Breach of the Franchise Agreement*

In its final argument, Pinnacle asserts that the district court erred in granting LCE's motion for summary judgment in its counterclaim that Pinnacle breached § V.A.2 of the franchise agreement. Pinnacle argues that the district court was wrong to conclude that LCE owns the trademark to "Hot-N-Ready." Alternatively, Pinnacle contends that § V.A.2 violates § 66 of the South Dakota Franchise Act and is unenforceable.

Section V.A.2 of the franchise agreement provides:

Franchise Owner expressly covenants that during the term of this Agreement, and after the termination or expiration thereof, the Franchise

-18-

Owner shall not directly or indirectly contest or aid in contesting and/or consent to a third party contesting the validity or ownership of said Proprietary Marks.

As we held in Section II.B, LCE owns the proprietary mark "Hot-N-Ready," even if the phrase was first used by a franchisee. Pinnacle contested the validity and ownership of the "Hot-N-Ready" concept by filing a lawsuit challenging LCE's rights to the mark. Pinnacle also sought the cancellation of LCE's trademark with the USPTO. Pinnacle asserts that its actions did not trigger the covenant not to sue because it brought the lawsuit against LCE in good faith. However, Pinnacle points to no provision in the franchise agreement or anything in Michigan law that implies a good-faith exception to the covenant not to sue. The express terms of the franchise agreement apply to any contest to the validity or ownership of LCE's proprietary marks.

Finally, Pinnacle asserts that LCE's action in bringing this claim constitutes an "unfair or inequitable" practice under South Dakota Codified Laws § 37-5A-66(7) (repealed 2008). This section allowed the state to issue a cease and desist order to a franchisor if the franchise agreement contains a term that "is or would be unfair or inequitable to franchisees."[9] Pinnacle has provided no authority to suggest that it is unfair or inequitable for a franchisor to exercise its rights under a mutually agreed upon covenant not to sue. We therefore reject Pinnacle's final argument and hold that LCE was entitled to summary judgment on its counterclaim for breach of contract.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[9]Section 66 has been replaced in part by South Dakota Codified Laws § 37-5B-41. However, § 66(7) was repealed in its entirety.

-19-