686 N.W.2d 756 (2004)
262 Mich.App. 345
GRAND TRUNK WESTERN RAILROAD, INC., Plaintiff-Appellee,
v.
AUTO WAREHOUSING COMPANY, Defendant-Appellant.
Docket No. 244246.
Court of Appeals of Michigan.
Submitted February 11, 2004, at Detroit.
Decided June 10, 2004, at 9:00 a.m.
Released for Publication August 18, 2004.
*759 Durkin, McDonnell, Clifton, Davis & O'Donnell (by Joseph J. McDonnell), Detroit, for the plaintiff.
Potter, DeAgostino, Campbell & O'Dea (by Steven M. Potter and Rick J. Patterson), Auburn Hills, for the defendant.
Before: NEFF, P.J., and WILDER and KELLY, JJ.
NEFF, P.J.
In this action for contractual indemnity, defendant Auto Warehousing Company appeals the trial court's grant of summary disposition in favor of plaintiff Grand Trunk Western Railroad, Inc., holding defendant liable for indemnification of *760 $625,000 of a $725,000 personal injury settlement between plaintiff and an injured railroad employee. The trial court found defendant liable as a matter of law after defendant refused a tender of defense in the underlying personal injury litigation, and plaintiff settled the claim.[1] We affirm, although for reasons different from those relied on by the trial court.

I
In December 1997, Terry Thomas, a brakeman/conductor employed by plaintiff, sustained injuries in a work accident while coupling railcars. Thomas suffered injuries to his right shoulder and left knee and was temporarily off work. Thomas filed a lawsuit against plaintiff, seeking recovery for his injuries under the Federal Employers' Liability Act (FELA), 45 U.S.C. 51 et seq. It is undisputed that this accident was not subject to indemnity.
Thomas returned to work in December 1998. On January 11, 1999, he was again injured when he slipped and fell after encountering a problem with snow-covered rail switches on sidetrack property that plaintiff leased to defendant to load automobiles onto railcars for transport. Thomas sustained injuries to his left shoulder and right knee and underwent four separate surgeries. Following the second accident, Thomas was classified as permanently disabled and unable to return to work. Thomas amended his complaint against plaintiff to include a claim for the 1999 accident. It is Thomas's claim for his second injury that is the subject of the indemnity dispute.
The lease agreement between plaintiff and defendant contained two clauses concerning indemnity. One required defendant to keep the premises free of hazards such as ice and snow and to indemnify plaintiff for any claims arising from the failure to do so. A second clause required defendant to indemnify, defend, and hold plaintiff harmless from any claims arising from personal injuries unless caused by the sole negligence of plaintiff, its agents, or employees.
After Thomas amended his complaint to seek recovery for the second injury, plaintiff notified defendant of the claim and tendered its defense on the basis of the indemnity provisions in the lease. Defendant denied liability and refused the tender of defense.
Plaintiff filed this third-party action for indemnity, and the case was consolidated with the underlying litigation. Thomas's FELA claims were thereafter submitted to facilitative mediation. The facilitator determined that Thomas's case was reasonably settled for $725,000, with $625,000 allocated to Thomas's 1999 injury.
Plaintiff notified defendant of its intent to settle with Thomas. Defendant declined the settlement.[2] Plaintiff settled the FELA claim in accordance with the settlement rendered by the facilitator. Following the settlement, the trial court granted plaintiff's motion for summary disposition of the indemnity claim and entered a judgment of $625,000 against defendant.[3] The court concluded that defendant breached its duty to defend under *761 the lease and therefore could not subsequently dispute its negligence or the amount of the settlement.

II
This Court reviews de novo a trial court's grant of summary disposition pursuant to MCR 2.116(C)(10). Spiek v. Dep't of Transportation, 456 Mich. 331, 337, 572 N.W.2d 201 (1998); Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 463, 663 N.W.2d 447 (2003). Summary disposition under MCR 2.116(C)(10) is properly granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Smith v. Globe Life Ins. Co., 460 Mich. 446, 454, 597 N.W.2d 28 (1999). The court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. Id.
Defendant is incorrect that the review standard for summary disposition is whether a record "might be developed" on which "reasonable minds might differ" and that summary disposition should be granted only if the court is satisfied that "it is impossible" for the nonmoving party's claim to be supported at trial. Id. at 455, n. 2, 597 N.W.2d 28. A party opposing a motion for summary disposition has the burden of showing by evidentiary proofs that a genuine issue of material fact exists. Id. "`Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in the pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists.'" Id. at 455, 597 N.W.2d 28, quoting Quinto v. Cross & Peters Co., 451 Mich. 358, 362, 547 N.W.2d 314 (1996).
The proper interpretation of a contract is also a question of law that this Court reviews de novo. Klapp, supra. Indemnity contracts are construed in accordance with the general rules for construction of contracts. Zurich Ins. Co. v. CCR & Co. (On Rehearing), 226 Mich.App. 599, 603, 576 N.W.2d 392 (1997); Triple E Produce Corp. v. Mastronardi Produce, Ltd., 209 Mich.App. 165, 172, 530 N.W.2d 772 (1995). Where the terms of a contract are unambiguous, their construction is a matter of law to be decided by the court. Zurich, supra at 604, 576 N.W.2d 392.

III
This case presents an issue of recovery under an express contract for indemnity when an indemnitee has settled a claim before a determination of liability has been made. Contractual indemnity is an area of law guided by well-settled general principles. Nonetheless, each case must ultimately be determined by the contract terms to which the parties have agreed. Triple E Produce, supra at 172-173, 530 N.W.2d 772; Culley & Assoc. v. Superior Court, 10 Cal.App.4th 1484, 1492, 13 Cal.Rptr.2d 624 (1992). Where the parties have contracted to create duties that differ or extend beyond those established by general principles of law, and the terms of the contract are not otherwise unenforceable, the parties must abide by the contractual duties created.
Railroad indemnity agreements have been in use for many years. Burlington Northern R Co. v. Stone Container Corp., 934 P.2d 902, 906 (Colo.App., 1997). These agreements are made in contemplation of a railroad's liability under FELA by providing for indemnification of the railroad when the indemnitor's conduct violates the railroad's nondelegable duty to furnish a safe work place. Burlington Northern, Inc. v. Hughes Bros., Inc., 671 F.2d 279, 284 (C.A.8, 1982); Consolidated Rail Corp. v. Ford Motor Co., 751 F.Supp. *762 674, 679 (E.D.Mich., 1990). It is generally recognized that under FELA a railroad may be liable for the failure to provide a safe place to work even where the employee's injury occurred on premises neither owned or controlled by the railroad. Id.
The railroad sidetrack agreement in this case provided for indemnity with regard to care of the leased premises, ¶ 10, as well as general indemnity, ¶ 19:
10. Care of the Leased Premises. Lessee shall obey and conform to all laws and ordinances, state or local, relating to the care of the Leased Premises. Lessee shall, at its sole cost and expense, maintain the Leased Premises in a neat and sanitary condition, free from hazards, obstructions, ice and snow, debris, inflammable, explosive and combustible materials, including dry grass and weeds.
If any changes in or about the Leased Premises become necessary to comply with any federal or state law or municipal ordinance, Lessee shall make such changes at its sole cost and expense.
* * *
Lessee agrees to indemnify and save Lessor harmless from all claims and liability to others by reason of Lessee's failure to comply with the obligations assumed by Lessee under the provisions of this section.
* * *
19. Indemnity. Lessee acknowledges that leasing property along a railroad right-of-way provides unique advantages as well as some risk that the Leased Premises may be damaged by train operations, maintenance operations and/or derailments. As further consideration for the rights provided herein, Lessee assumes any and all risk and liability for, releases and agrees to indemnify, defend, protect and save harmless Lessor from and against:
* * *
b) claims arising from any injury to or death of any person (including employees of Lessee or Lessor) being on the Leased Premises or caused by or in connection with the use of the Leased Premises, unless caused by the sole negligence of Lessor, its agents or employees.
c) Upon tender of the defense of such claims by Lessor, Lessee shall undertake the defense of Lessor at Lessee's sole cost and expense, including all attorneys [sic] fees and costs.

IV
The trial court resolved this case not on the basis of the lease agreement's express indemnity provisions, but on defendant's express duty to defend. The court held that defendant breached the lease by refusing to defend the case after plaintiff tendered its defense, and that defendant therefore was barred from raising issues of negligence and the proper allocation of damages. The court based this conclusion on an insurer's duty to defend claims even arguably within the scope of the insurance coverage. Defendant contends that the trial court erred in holding defendant to the same standard as an insurance company with regard to defendant's contractual duty to defend. We agree.
Although the rules of contractual indemnity are derived primarily from insurance and construction cases, the rules governing contractual indemnity generally are well-established and govern this case. Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1093-1094 (C.A.1, 1989); Culley, supra at 1492, 13 Cal.Rptr.2d 624. The general rules for contractual indemnity apply to claims of indemnity in commercial transactions, rather than the specific rules governing an insurer's duty to defend. *763 See 13 Mich. Civil Jurisprudence, Indemnity and Contribution, § 15, p. 243.
If an indemnitor has notice of an action and declines the opportunity to defend it, the general rule is that the indemnitor will be bound by any reasonable, good faith settlement the indemnitee might thereafter make. Fashion House, supra at 1094. Where parties have expressly contracted with respect to the duty to indemnify, the extent of the duty must be determined from the language of the contract. Id.; Culley, supra at 1492, 13 Cal.Rptr.2d 624. In this case, the contractual duty to defend is coincident with the duty to indemnify under ¶ 19.
Under the unambiguous language of ¶ 19 of the lease, defendant has a duty to defend such claims that fall within its duty to indemnify:
As further consideration for the rights provided herein, Lessee assumes any and all risk and liability for, releases and agrees to indemnify, defend, protect and save harmless Lessor from and against:
* * *
b) claims arising from any injury to or death of any person (including employees of Lessee or Lessor) being on the Leased Premises or caused by or in connection with the use of the Leased Premises, unless caused by the sole negligence of Lessor, its agents or employees.
c) Upon tender of the defense of such claims by Lessor, Lessee shall undertake the defense of Lessor at Lessee's sole cost and expense, including all attorneys [sic] fees and costs.
Unlike in the insurance context, defendant's duty to defend is not separate and distinct from the duty to indemnify, and the court erred in so holding. We agree with defendant that the duty to defend is not absolute, and defendant's contractual duty to defend is not, in and of itself, dispositive of this case.
Nonetheless, the trial court's error does not require reversal. This Court will not reverse an order of the trial court if the court reached the right result for the wrong reason. Etefia v. Credit Technologies, Inc., 245 Mich.App. 466, 470, 628 N.W.2d 577 (2001). The trial court's grant of summary disposition was proper given plaintiff's potential liability under FELA and evidence that the settlement was reasonable.

V
Two general principles of law, applicable to contractual indemnity in this context, are well-established. First, if an indemnitee settles a claim against it before seeking the approval of, or tendering the defense to, the indemnitor, then the indemnitee must prove its actual liability to the claimant to recover from the indemnitor. However, the indemnitee who has settled a claim need show only potential liability if the indemnitor had notice of the claim and refused to defend. 41 Am Jur 2d, Indemnity § 46, pp. 380-381; Consolidated Rail, supra at 676.
These principles, and the policy underlying their formulation, were directly addressed in Ford v. Clark Equip. Co., 87 Mich.App. 270, 276-278, 274 N.W.2d 33 (1978). If (1) an enforceable contract of indemnity exists, (2) a seasonable tender of defense is made with notice that a settlement will be entered, and (3) the tender of defense is refused, an indemnitee need show only potential liability to recover on a contract of indemnity. To require a showing of actual liability in these circumstances places too heavy a burden on a defendant who settles after a tender of the defense to the contractual indemnitor and would undermine this state's policy of encouraging the settlement of lawsuits. Id. *764 at 277, 274 N.W.2d 33. "The settlement of a suit benefits both parties and the public." Id.
In Ford, this Court explained the analysis and proof required for potential liability, i.e., in a case such as this one, in which a seasonable tender of defense was made with notice that a settlement will be entered and the tender of defense was refused.
To recover under these circumstances the indemnitee must show that the fact situation of the original claim is covered by the contract of indemnity and that the settlement is reasonable.
Potential liability actually means nothing more than that the indemnitee acted reasonably in settling the underlying suit. The reasonableness of the settlement consists of two components, which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle. [Ford, supra at 277-278, 274 N.W.2d 33 (citations omitted).]

VI
Defendant does not dispute that the rule of potential liability applies in this case. Rather, defendant claims that the potential liability analysis need not be reached. Citing Ford, defendant argues somewhat circuitously that a prerequisite to the application of the potential liability rule is that indemnity is owed pursuant to contract.
Defendant asserts that plaintiff had the burden of showing that Thomas's claims were covered under the indemnity provisions of the lease, before the trial court could embark on an analysis of potential liability and whether the settlement was reasonable. Accordingly, because questions of fact remained regarding whose negligence caused Thomas's injuries, and whether defendant breached the duty owed regarding ice and snow removal, summary disposition was improper.
We find defendant's reasoning flawed. Defendant's argument raises questions of liability, which are properly resolved under the potential liability standard. To the extent that Ford incorporates sole negligence considerations in determining whether the fact situation is covered by the indemnity contract, we find Ford's analysis confusing and redundant.[4] The threshold question whether the fact situation is covered by the indemnity contract generally requires only a straightforward analysis of the facts and the contract terms.
Under the terms of the parties' lease in this case, it is clear that the fact situation of the original claim is covered under the indemnity contract. Thomas's claim arose from an injury that occurred *765 on the leased premises, which falls within the indemnity provisions, ¶ 19(b). Further, the claim raises an issue of defendant's obligation to keep the leased premises free of ice and snow under ¶ 10.
Defendant argues that under the lease, defendant's duty to remove ice and snow was governed by Michigan law, and because defendant's actions conformed with Michigan law, defendant properly declined plaintiff's tender of defense on the ground that plaintiff was not entitled to indemnification. This argument, though couched in terms of contract coverage, is actually a liability argument, properly considered in weighing the reasonableness of a settlement. The fact that the original claim may have been successfully defended by a showing of contributory negligence, lack of negligence, or otherwise is part of the reasonableness analysis. Ford, supra at 278, 274 N.W.2d 33.
We recognize that if defendant had shown that Thomas's suit would have been successfully defended, plaintiff may not recover on the indemnity claim. Id. at 278, 274 N.W.2d 33. Likewise, if defendant had shown that Thomas's injuries were caused by the sole negligence of plaintiff or Thomas, plaintiff could be precluded from indemnification under ¶ 19(b) of the lease. However, defendant presented no conclusive evidence in either regard.
Moreover, defendant argues on appeal that summary disposition was improper because, at a minimum, there were factual issues regarding the reasonableness of defendant's snow removal and Thomas's sole negligence. Defendant's concession that there were factual issues on the issue of negligence essentially is a concession of potential liability and precludes any argument that defendant had no duty to defend on the basis that there was no liability under the parties' lease. Effectively, the only evidence tending to establish that plaintiff or Thomas was solely negligent in causing Thomas's injuries were defendant's general allegations. Defendant may not rely on general allegations or denials to overcome a motion for summary disposition. Smith, supra at 455, 597 N.W.2d 28.

VII
Having determined that the fact situation is covered by the contract of indemnity, the only remaining considerations are whether plaintiff had potential liability and whether the settlement was reasonable. It is well-settled that if an indemnitor denies liability and refuses to assume the defense of a claim under a contract of indemnity, the indemnitee, without waiving its right to indemnification, may enter into a good faith, reasonable settlement with the claimant. Neustrom v. Union Pacific R Co., 156 F.3d 1057, 1066-1067 (C.A.10, 1998); Burlington Northern R v. Stone, supra at 906. In that circumstance, the indemnitee need only show that it had potential liability and that the settlement amount was reasonably related to the liability exposure and the employee's injuries. Id. at 907. To the extent that Ford can be read differently, it is rejected.
Defendant argues that the allocation of $625,000 of the settlement to Thomas's 1999 injury was unjustified, and, furthermore, plaintiff may have successfully defended the claim. We find defendant's challenge on these grounds untenable.

A
It is undisputed that plaintiff's liability to Thomas under FELA included a duty to provide a reasonably safe workplace. Under FELA, plaintiff possessed a nondelegable duty to provide its employees with a safe place to work. Burlington Northern, Inc v. Hughes, supra at 283; Consolidated Rail, supra at 678-679. "[T]he obstacles to recovery facing FELA *766 plaintiffs are much lower than those facing most tort plaintiffs." Neustrom, supra at 1067. Plaintiff was liable for Thomas's injury if plaintiff's negligence played even the slightest part in producing the injury. Burlington Northern, Inc v. Hughes, supra.
Defendant asserts that it cannot be assumed that Thomas would have been successful in his claims regarding the 1999 incident because Thomas could not necessarily show that plaintiff failed to meet the FELA standard of providing Thomas a reasonably safe place to work with regard to the ice and snow removal. Additionally, Thomas failed to heed his supervisor's instruction to simply stand still and not attempt to clean the rail switch. We find these arguments insufficient to survive plaintiff's motion for summary disposition on the issue of potential liability.
"A showing of reasonableness in an indemnity suit should not involve a plenary trial of the underlying FELA issues." Id. at 283. Given the FELA standard for liability, and the evidence, defendant has failed to meet its burden of producing evidence that the suit would have been successfully defended. Ford, supra at 278.
Defendant's argument that it cannot be assumed that Thomas would have been successful in his claim is insufficient to survive plaintiff's motion for summary disposition on the issue of potential liability. If a party opposing a motion for summary disposition fails to present evidentiary proofs establishing the existence of a material factual dispute, summary disposition is properly granted. Smith, supra at 455 n. 2, 597 N.W.2d 28.

B
Defendant argues that plaintiff improperly and unjustifiably allocated $625,000 to Thomas's 1999 injury, which was subject to the indemnity claim, and allocated only $100,000 to the 1997 injury, which was not subject to the indemnity claim.[5] Defendant argues that the trial court erred in failing to consider evidence that the bulk of Thomas's injuries were actually attributable to the 1997 accident.
The trial court submitted this case to facilitation/mediation. The independent facilitator rendered a settlement of $100,000 for Thomas's 1997 injury, in addition to the $85,000 previously paid for light duty employment, and a settlement of $625,000 for Thomas's 1999 injury. Although defendant argues that the facilitator merely adopted plaintiff's proposed allocation of the settlement, the facilitator's settlement expressly states: "Mediator [facilitator] agrees that this settlement is reasonable."
In moving for summary disposition, plaintiff presented not only the independent facilitation settlement, but also evidence from Thomas's economic expert that calculated Thomas's net wage loss and lost earning capacity as $1,033,662. Only approximately $10,000 of the $1 million wage loss was attributable to wages lost before January 11, 1999. Although defendant argues a contrary view of allocation based on the nature of Thomas's injuries, defendant's arguments do not raise a triable issue of fact concerning whether the settlement was reasonable.
We are mindful of the statement in Ford, supra at 278, 274 N.W.2d 33, that "[t]he fact that the claim may have been successfully defended by a showing of contributory negligence, lack of negligence or otherwise, is but a part of the reasonableness analysis and, therefore, subject to proof." We do not read this statement to expand the analysis of the reasonableness *767 of a settlement to include plenary consideration of liability issues in the underlying litigation. To do so would contravene the policy of encouraging the settlement of lawsuits. Id. at 277, 274 N.W.2d 33.
We conclude that defendant failed to raise a triable issue of fact regarding plaintiff's potential liability to Thomas for his 1999 injuries and the reasonableness of the settlement.
Affirmed.
KELLY, J., concurred.
WILDER, J. (concurring in part and dissenting in part).
While I agree with and join much of the analysis by the majority, I respectfully dissent from section VII(B) of the majority's opinion. I would conclude that there is an issue of fact regarding the reasonableness of the settlement reached by plaintiff with Terry Thomas and would remand for trial on this question.
I agree with the majority's conclusion that "the analysis of the reasonableness of a settlement [does not] include plenary consideration of liability issues in the underlying litigation." Ante at 766-67. However, "the amount paid in settlement of the claim in light of the risk of exposure" is very much a fact to be considered in determining the reasonableness of a settlement. Ford v. Clark Equip. Co., 87 Mich.App. 270, 278, 274 N.W.2d 33 (1978). Before the settlement between Thomas and plaintiff, defendant asserted that only $50,000 of the proposed settlement was properly allocable as damages for Thomas's 1999 injuries. In opposing summary disposition in the present case, defendant offered direct evidence of Thomas's injuries and his ability to recover from his injuries to contradict the opinion of the independent facilitator and Thomas's economic expert that damages were appropriately allocated in the amounts of $100,000 for injuries Thomas suffered in 1997, and $625,000 for his 1999 injuries. Because the trial court was required to consider this evidence concerning damages in the light most favorable to defendant, Maiden v. Rozwood, 461 Mich. 109, 120, 597 N.W.2d 817 (1999), I would conclude that while defendant may not challenge plaintiff's potential liability to Thomas for his 1999 injuries, defendant has raised a triable issue of fact regarding the reasonableness of the settlement amount allocated to each claim of injury that precludes summary disposition.
NOTES
[1] Plaintiff's indemnity action was consolidated with the underlying personal injury suit. Defendant appeals as of right following the dismissal of the underlying litigation pursuant to the settlement.
[2] Defendant purportedly offered to contribute $50,000 toward the settlement.
[3] The trial court also awarded plaintiff attorney fees, interests, and costs, but reserved ruling on the amount of the award until after any appeal.
[4] The burden of proof in Ford was based on a statute that rendered void and unenforceable construction contract provisions purporting to indemnify the sole negligence of the indemnitee, its agents, or its employees. MCL 691.991; Ford, supra at 275, 274 N.W.2d 33. The Ford Court noted that because of the construction statute, the indemnitee must show that liability was not the result of its sole negligence to establish that the contract covered the situation. Id. at 278-279, 274 N.W.2d 33. In this case, however, the indemnity agreement provided an exclusion for plaintiff's sole negligence, and therefore the indemnitor properly has the burden to establish the indemnitee's negligence to avoid the duty to indemnify. 41 Am Jur 2d Indemnity 57, p. 388.
[5] Defendant conceded that the overall settlement of $725,000 was reasonable.