*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSICA SHERMAN,

      Plaintiff-Appellant,

v

BRAR BIR-INDER SINGH,

      Defendant-Appellee.

UNPUBLISHED
March 28, 2024

No. 363517
Kent Circuit Court
LC No. 21-011155-CZ

Before: HOOD, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In this action related to a real estate transaction, plaintiff Jessica Sherman appeals as of right the trial court's order granting summary disposition to defendant Brar Bir-Inder Singh under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. BACKGROUND

This case originates from Sherman's purchase of a residential property from Singh, and Sherman's subsequent discovery of water damage and mold in the basement of the home. Another couple owned the house before Singh. During the winter of 2012, the couple left their house for an extended period. Before leaving, they turned off their furnace's pilot light. This and cold temperatures caused a water pipe to burst and flood the basement. When the couple returned, they turned up the heat on the furnace to dry out the home. It instead caused mold to grow, including on the walls and windows of the basement. The couple then relocated and defaulted on their mortgage.

The bank foreclosed on the house and obtained title. In 2013, the bank had the basement remodeled, which included removing and replacing the drywall, trim, ceiling tiles, and carpet. After the remodel, the bank transferred title to the Department of Housing and Urban Development (HUD). HUD inspections revealed that the house no longer contained evidence of water damage or mold, so HUD listed the home for sale.

In February 2015, Singh walked through the home with HUD's selling agent. Singh, his wife, and a real-estate agent, Michael Childress, stated there was no observable mold or water

-1-

damage in the home.[1]  After the walkthrough, Singh bid on the home, which HUD accepted.  Singh averred that none of the documents HUD gave to him disclosed the home's history of mold and water damage.

After HUD conveyed title to him, Singh moved into the home in June 2015.  Singh owned the property for five years, though he and his family resided there for only three years.  While he owned the house, Singh hired contractors to perform work on the main floor and second floor.  Singh also planned to "eventually" renovate the basement, so he had contractors remove carpeting and ceiling tiles.  Those renovations never took place.  Singh and his wife denied any issues with mold or water when they lived in the house.

Singh listed the house for sale in 2019 after he and his family had already purchased another house.  While it was listed, he regularly returned to the house to maintain it and prepare it for sale.  None of his maintenance projects included improvements or attempts to conceal mold or water issues, Singh insisted, because "no such issues existed."  He indicated that he and his listing agent, Nick Bellmore, visited the home "many times throughout 2019 and 2020" to make the home "ready for showings."  Neither Singh nor Bellmore saw signs of water damage or mold during the time the house was for sale.  In an undated seller's disclosure statement, Singh stated the house was being sold "as is," and disclosed that there was no evidence of water in the basement and that it was unknown whether there had been any flooding.[2]

In December 2019, a prospective buyer made an offer on the home.  Singh accepted the offer, so he and the prospective buyer entered into a purchase agreement.  During an inspection, the city turned off water to the home and inspectors noticed a water main meter leak.  After the inspection, the prospective buyer emailed his realtor expressing concerns about the property, including about the furnace, electrical, and plumbing.  A second inspection was conducted, and after an inspection report was prepared, the prospective buyer's realtor emailed Bellmore about the buyer's concerns and attached the inspection report.  Among the buyer's concerns were plumbing issues and "[m]old in some parts of the ceiling show evidence of excessive water damage.  Will have to get rid of Mold by an expert."  The December 2019 report did not itself explicitly identify mold or significant water damage in the basement.  But it did identify a small puddle of water on the basement floor, a "heavy leak" in the basement bathroom, and a moisture location in the basement.  It also mentioned the existence of "present water leakage' and a "Mold-like substance" in the "Whole home Living Space Ceiling," but said nothing about the basement ceiling.

---

[1] In his affidavit, Childress indicated that someone had posted a sign on the home that said, "BUYER BEWARE!!! THIS HOUSE WAS FLOOD [SIC] & HAD BLACK MOLD FOR OVER 2 YEARS."  Childress removed the sign and did not know whether Singh had knowledge of or saw the sign.  Singh denied seeing or knowing of the sign.

[2] According to Singh, the contents of the 2019 seller's disclosure statement remained the same as those in the 2020 disclosure statement that Singh provided to Sherman, which will be discussed later.

Bellmore forwarded the prospective buyer's email and the inspection report to Singh, who acknowledged receipt of the email. He later maintained, however, that he was focused on the price of the home, not the email's other contents. Singh testified that he never read the attached inspection report, and he did not modify the disclosure statement to reflect knowledge he acquired from the inspections because, in his opinion, "nothing ha[d] changed" requiring him to do so. Regardless, the purchase agreement with the prospective buyer fell through because the parties could not agree on a purchase price.

In the summer of 2020, Sherman did an initial walkthrough of the house and made an offer to purchase it shortly after. Singh accepted Sherman's offer in June 2020, and the parties entered into a purchase agreement.

Under the agreement and before closing, Sherman had the house inspected. The inspection uncovered several plumbing, roofing, and electrical issues with the house. Aside from a leak in the basement bathroom drain and a spot of mold in a second-floor closet, however, neither Sherman, her inspector, nor any of the contractors making postinspection repairs mentioned any evidence of mold or water damage in the basement.[3] In light of these newly-discovered issues, the parties agreed to an addendum to the purchase agreement in which Singh agreed to hire contractors to take care of the plumbing, roofing, and electrical issues and to pay for a one-year warranty on the house.[4] In August 2020, Sherman verified that all repairs outlined in the addendum were completed to her satisfaction, and the parties closed that same month.

After Sherman moved into the house, she learned from neighbors that the house had flooded before Singh owned it, leading to mold in the basement. Sherman hired two residential testing companies to test for mold. The first company identified suspicious spots of discoloration in several areas of the basement and confirmed the presence of mold on one spot at the bottom of the basement stairs. The company also discovered moldy personal possessions in the basement that Singh had left behind. The second company also found evidence of mold in the basement. Sherman obtained several remediation quotes, one of which stated that getting rid of the mold would cost over $90,000.

In early December 2021, Sherman sued Singh, alleging four claims: fraudulent misrepresentation, silent fraud, negligent misrepresentation, and breach of contract. Regarding her fraudulent-misrepresentation claim, Sherman alleged that Singh falsely stated in his seller's disclosure statement that there was no evidence of water in the basement. She also asserted, with respect to her silent-fraud claim, that Singh had actual knowledge of water and mold in the basement that he tried to conceal with remedial efforts. For her negligent-misrepresentation claim, Sherman alleged that even if Singh unintentionally concealed the house's defects, he breached his duty to disclose known facts about the house's condition. And, with respect to her breach-of-

---

[3] Sherman admitted that the mold spot on the second floor had "nothing to do with th[is] lawsuit . . . ."

[4] Sherman's realtor, Liz Rhoda, emailed Bellmore asking for Singh to provide a home warranty because the inspector and contractors advised that there "may be more issues that make themselves known once she gets the home up and running again (especially plumbing)."

contract claim, Sherman alleged that Singh breached the purchase agreement by failing to deliver the house in the same condition as disclosed in the disclosure statement and by failing to remove all of his personal property, as required under the purchase-agreement addendums.

In late December 2021, Singh answered Sherman's complaint, denying that he made any false statements in the seller's disclosure statement. He also denied having actual knowledge of water or mold in the basement, that his disclosures were negligent, or that he breached his obligations under the purchase agreement.

In late August 2022, Singh moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10). In support of his motion, Singh argued that there was no genuine issue of material fact concerning his actual knowledge of water damage and mold in the basement. He asserted he had no actual knowledge of the mold and water damage, and that Sherman's reliance on assumptions and speculation was insufficient to avoid summary disposition. Singh also argued that Sherman could not show that she relied on the seller's disclosure statement, noting that she did not know when she read it and that she admitted she " 'put[] a lot of faith' " in the inspection process and was relying on her home inspector. Singh addressed Sherman's breach-of-contract claim in a footnote, arguing that summary disposition was warranted because the purchase agreement merged with the deed at closing and "preclude[d] consideration of agreements prior to [the] deed."

In early September 2022, Sherman responded to Singh's motion for summary disposition. She argued there were factual issues regarding Singh's actual knowledge of the water damage and mold, asserting that a reasonable factfinder could infer from circumstantial evidence that Singh had actual knowledge of water in the basement. Sherman also argued that a factual dispute existed regarding her reliance on Singh's representations in the disclosure statement, noting that she reviewed and discussed it with her realtor, Liz Rhoda, before she submitted her offer. And she argued that the merger doctrine did not preclude her breach-of-contract claim because the doctrine had been rejected by this Court and the Michigan Supreme Court.[5]

After Singh replied, the trial court held a hearing on the motion in mid-September 2022. The parties argued consistent with their respective briefs. Singh argued that Sherman had failed to present evidence that Singh had actual knowledge of mold or water damage in the basement, saying she was "throwing everything at the wall to see what sticks." Singh asserted also that Rhoda's affidavit did not support Sherman's reliance argument because it did not explain the extent of Sherman's alleged reliance on the seller's disclosure statement. He further noted that Sherman herself did not provide an affidavit, that Sherman was unsure of when she read the disclosure statement, and that she admitted putting faith in the home inspection process. Sherman responded at the hearing, arguing that the December 2019 inspection report identified water issues in the basement. She argued that summary disposition was inappropriate when a party's motive, intent, or knowledge is material to the issues.

In early October 2022, the trial court granted Singh's motion for partial summary disposition in a written opinion and order. Regarding Sherman's misrepresentation claims, the

---

[5] Sherman voluntarily dismissed her silent-fraud claim.

-4-

court found that the December 2019 email listing water damage and mold was direct evidence that Singh knew about mold in the house, but that it was "now clear" that the mold discussed in the email was "found on the ceiling of a room in the upper floor of the home." The trial court noted that Sherman had conceded this mold was "not the subject of her lawsuit" and was later discovered during her inspection. The court also found that Sherman could not establish reliance on Singh's disclosure statement because she relied on her own inspection. The trial court also granted summary disposition of Sherman's breach-of-contract claim. It declined to address the merger argument because the parties did not provide "any meaningful analysis . . . ." The court instead found summary disposition appropriate because Sherman restated her misrepresentation claims as a breach-of-contract claim.

This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). "Mere speculation and conjecture cannot give rise to a genuine issue of material fact." *McGrath v Allstate Ins Co*, 290 Mich App 434, 448 n 1; 802 NW2d 619 (2010). Courts are not precluded from granting summary disposition "whenever a claim or defense involves an individual's motive or intent." *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019). Thus, "the nonmoving party may not rely on the fact that a jury might disbelieve a witness's testimony to establish a question of fact that precludes summary disposition." *Id*. at 89. The nonmoving party must instead "identify evidence that puts the affiant's or the deponent's credibility at issue to avoid summary disposition." *Id*. at 90.[6]

---

[6] In her brief on appeal, Sherman relies in part on an outdated and overruled summary disposition (actually summary judgment under the 1963 court rules) standard, arguing that under MCR 2.116(C)(10) the trial court can only grant a motion if it is "impossible" for the nonmoving party to support its claim at trial. Yet it has been almost twenty years since the Supreme Court (1) explicitly recognized that that standard was inapplicable under the Michigan Court Rules established in 1985, and (2) reversed the cases citing to that standard. See *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999). We recognized this point more than a decade ago in *Grand Trunk Western R, Inc v Auto Warehousing Co*, 262 Mich App 345, 350; 686 NW2d 756 (2004), yet still today we receive briefs that contain this outdated, overruled, and inapplicable standard. Appellate practitioners should avoid citing to these summary judgment standards that were long ago set aside by the 1985 Court Rules that established a more intricate and different summary disposition standard.

### III.  MISREPRESENTATION AND FRAUD CLAIMS

Sherman argues that a genuine issue of material fact existed regarding Singh's actual knowledge of water and mold damage in the basement of the house, and that Sherman reasonably relied on Singh's seller's disclosure statement when she purchased the house.  We agree with respect to Singh's actual knowledge, but disagree about her reliance.

### A.  APPLICABLE LAW

"The common-law rule with respect to real-estate transactions is *caveat emptor* [let the buyer beware]." *Roberts v Saffell*, 280 Mich App 397, 402; 760 NW2d 715 (2008).  Thus, at common law, "a land vendor who surrenders title, possession, and control of property shifts all responsibility for the land's condition to the purchaser." *Id*. (quotation marks and citation omitted).  There are "several theories of fraud as exceptions to the common-law rule of caveat emptor in real estate transactions," including, relevant here, traditional common-law fraud. *Id*. at 403.

To establish a fraudulent-misrepresentation claim, or common-law fraud, a plaintiff must show

> (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury. [*Roberts*, 280 Mich App at 403.]

By contrast, a claim of negligent misrepresentation requires a plaintiff "to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Alfieri v Bertorelli*, 295 Mich App 189, 194; 813 NW2d 772 (2012) (quotation marks and citation omitted).  Fraud is not presumed but must instead be proven by clear and convincing evidence. *Deschane v Klug*, 344 Mich App 744, 750; 2 NW3d 131 (2022).

Claims arising out of the sale of a residential home are subject to the Seller Disclosure Act (SDA), MCL 565.951 *et seq*. *Roberts*, 280 Mich App at 408.  The SDA "requires a transferor of certain real property to answer all items required by MCL 565.957[7] honestly, on the basis of information actually known to the transferor at the time the [seller's disclosure statement] is completed." *Id*. at 410 (footnote added).  If an item "is specified for disclosure on the [seller's disclosure statement], a transferor may be liable for fraud or silent fraud if the elements of those causes of action are proved, including that the transferor possessed personal knowledge about the item but failed to exercise good faith by disclosing that knowledge." *Id*. at 414 (quotation marks and citation omitted).

---

[7] MCL 565.957 addresses the form of a seller's disclosure statement.

Liability under the SDA is precluded, however,

> for errors, inaccuracies, or omissions in a seller disclosure statement that existed when the statement was delivered, where the seller lacked personal knowledge, and would not have had personal knowledge by the exercise of ordinary care, of any error, inaccuracy, or omission and thus proceeds in good faith to deliver the disclosure statement to the buyer. [*Bergen v Baker*, 264 Mich App 376, 385; 691 NW2d 770 (2004), citing MCL 565.955, MCL 565.956, and MCL 565.960 (footnote omitted).]

Under the SDA, a seller of real property has a duty to exercise ordinary care when transmitting information to a buyer. *Roberts*, 280 Mich App at 413. The SDA does not, however, require a seller to exercise ordinary care to discover defects in a home being sold. *Id*. at 416 n 2. The seller instead has a duty to "honestly disclose items about which the transferor actually knows." *Id*. Such items include those "within the personal knowledge of the transferor," MCL 565.955(1), "known to the transferor," MCL 565.956, and "known by the seller," MCL 565.957. See *id*. "If . . . an item of information required to be disclosed under this act is unknown or unavailable to the transferor, the transferor may comply with this act by advising a prospective purchaser of the fact that the information is unknown." MCL 565.956.

### B. FACTUAL DISPUTE REGARDING WHETHER SINGH ACTUALLY KNEW OF WATER DAMAGE AND MOLD IN THE BASEMENT

Sherman argues that the trial court erred by finding that there was no genuine issue of material fact regarding Singh's actual knowledge of water damage and mold in the basement of the house. We agree.

There was a genuine issue of material fact regarding whether Singh had actual knowledge of mold and water damage in the basement that he should have disclosed in his seller's disclosure statement. The December 2019 inspection report contained a photograph of a water-damaged spot on the wall in the basement. Though Singh denied looking at the December 2019 inspection report forwarded to him by his realtor, he acknowledged receiving the email that attached the report. His denial in the context of acknowledging receipt of the email presents a credibility issue better left to the trier of fact. See *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). That is, a reasonable juror could find that Singh's denial lacks credibility and could reasonably conclude that he did in fact open the attachment. And if this were the case, then a reasonable juror could conclude that Singh knew of the water damage in the basement, represented by the photo in the re-inspection report. Even if Singh did not open the attachment, he acknowledged receiving the email that explicitly mentioned the presence of mold and water damage in the home: "Mold in some parts of the ceiling show evidence of excessive water damage. Will have to get rid of Mold by an expert." This did not refer to a specific area of the home, so if Singh received and read the email as he acknowledged, then he was put on notice of mold and "excessive water damage" somewhere in his home. We conclude this was sufficient to create a triable issue of fact with respect to Singh's actual knowledge of the water damage and mold in the basement.

## C. NO GENUINE ISSUE OF MATERIAL FACT REGARDING SHERMAN'S RELIANCE ON THE DISCLOSURE STATEMENT

Sherman also argues that the trial court erred by ruling that she failed to raise a genuine issue of material fact on whether she reasonably relied on Singh's assertions in the disclosure statement. We disagree.

Beyond actual knowledge, a plaintiff must also establish that she "acted in reliance" upon a defendant's representation. *Roberts*, 280 Mich App at 403. In the context of summary disposition of fraud-based claims, a nonmoving party must assert, with factual support, that she actually relied on the information in the seller's disclosure statement. See *Bergen*, 264 Mich App at 380-381, 389. The reliance must be reasonable, however, and a party cannot be said to have reasonably relied on a seller's disclosure statement when the statement makes no assertion on which a plaintiff could actually rely. See *id.* at 378, 389-390.

Here, the evidence establishes that Sherman did not rely on Singh's representations in the disclosure statement. Sherman stated that, after she entered into the purchase agreement with Singh, she obtained a house inspection. Sherman received a 30-page report from her preclosing inspection, which identified multiple water-related problems. These included repairs needed to prevent water entry and damage to the foundation and interior, downspouts that needed to be directed away in order to prevent water damage in the basement, plumbing leakages, leaks in the basement bathroom, and mold in the upstairs closet. Rhoda (Sherman's realtor) stated in an email to Bellmore (Singh's realtor) that Sherman knew the house would have future problems, so she asked Singh to provide a home warranty and initiate repairs, including to correct the water-related issues. Singh agreed to provide the home warranty and Sherman affirmed that the repairs made were satisfactory. During her deposition, Sherman further mentioned multiple issues with the house that she observed when she walked through the house, including the basement drywall and recently-purchased paint, which, in her opinion, looked as if Singh was trying cover up mold. Despite these issues, Sherman still purchased the house.

As for the seller's disclosure statement, Sherman did not know when she read it. She was uncertain whether she read the disclosure statement before or after entering into the purchase agreement or before or after the closing. This undermines any claim she relied on the disclosure statement in purchasing the home. Sherman's difficulty obtaining additional information from Singh about the house also supports the conclusion that she predominantly relied on the preclosing inspection report and her realtor's recommendations, not the disclosure statement. Sherman also engaged in additional negotiations to fix the problems uncovered during the preclosing inspection, which Singh had completed to her satisfaction. On appeal, Sherman points to Rhoda's affidavit to prove that she relied on the seller's disclosure statement. Although Rhoda averred that she discussed the terms of the disclosure statement with Sherman before Sherman made her offer, Rhoda's affidavit does not explicitly indicate that Sherman relied on the disclosure statement when she purchased the house. The affidavit instead suggests that Sherman relied a great deal on her realtor's recommendations. And most critically, Sherman did not submit an affidavit indicating that she relied on the seller's disclosure statement when purchasing the house. The trial court therefore did not err when it found that Sherman failed to raise a genuine issue of material fact on whether she reasonably relied on Singh's representations in the disclosure statement.

## IV.  BREACH OF CONTRACT

Finally, Sherman argues that the trial court erred when it granted summary disposition of her breach-of-contract claim.  We disagree.

To establish a breach-of-contract claim, the plaintiff "must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach."  *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).  But we are not bound by a party's choice of labels for its claims, as that would "exalt form over substance."  *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011) (quotation marks and citation omitted).  A party cannot avoid dismissal of a claim through "artful pleading."  *Id*.  We determine the gravamen of a party's action by "examining the entire claim" and do so by "look[ing] beyond the procedural labels in the complaint and determine the exact nature of the claim."  *Id*.

In Count IV of her complaint, Sherman alleged that Singh breached his obligations under the purchase agreement by failing to deliver the house in the same condition as disclosed in the disclosure statement.  The trial court concluded, however, that Sherman's breach-of-contract claim was merely a restatement of her misrepresentation claim.  We agree with the trial court.  For her breach-of-contract claim, Sherman alleged that Singh breached his obligations under the purchase agreement by failing to deliver the house in the same condition as disclosed in the seller disclosure statement and failing to remove his personal property.  Sherman makes the same allegations in her misrepresentation claims, asserting repeatedly that Singh failed to disclose defects in the house and that his failure to disclose would cost her over $100,000 in remedial measures.  The trial court did not err by concluding that Sherman had simply restated her misrepresentation claims as a breach-of-contract claim.  See *Norris*, 292 Mich App at 582.

We affirm.

/s/ Noah P. Hood
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado