# STATE OF MICHIGAN

# COURT OF APPEALS

FLAGSTAR BANK FSB,

　　　　Plaintiff-Appellee,

UNPUBLISHED
November 22, 2016

v

MONEY WISE INVESTMENT, INC,

　　　　Defendant-Appellant.

No. 328332
Oakland Circuit Court
LC No. 2014-142707-CK

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In this dispute relating to an indemnification claim, defendant Money Wise Investment, Inc. (Money Wise) appeals by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of plaintiff Flagstar Bank FSB (Flagstar). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In 1998, Money Wise entered into a contract with Flagstar (the broker agreement). Under the terms of the agreement, Money Wise would sell loans to Flagstar, who then had the option of reselling those loans on the secondary market.

In 2005, Money Wise originated a $169,520 mortgage loan to Attef A. Girgis and Gisele H. Girgis (the Girgis loan). A few days later, pursuant to the broker agreement, Money Wise sold the promissory note and mortgage on the Girgis loan to Flagstar. Subsequently, in 2006, Flagstar sold the loan to Fannie Mae on the secondary market. The Girgis loan eventually entered into default for non-payment, with the last payment remitted in August 2009. Fannie Mae foreclosed on the property and it was sold.

In September 2013, Fannie Mae sent a letter to Flagstar demanding reimbursement for its losses on the Girgis loan. Significantly, Fannie Mae stated:

> According to a recent credit report obtained by Fannie Mae, the credit report represented four additional mortgages closed prior to the subject transaction. These liabilities, which were not disclosed by the borrower on the origination application, resulted in $271510 additional debt. The borrower failed to provide a factual financial statement regarding his financial condition.

Additionally, we are unable to determine the impact on the borrower's available assets and reserves at the time of the subject loan closing. These undisclosed mortgages resulted in a misrepresentation of the borrower's financial condition and unacceptable additional layering of risk.

Fannie Mae provided details on each of the undisclosed mortgages. Moreover, Fannie Mae asserted that the errors constituted a breach of Flagstar's contractual warranty that "no fraud or material misrepresentation has been committed by any party, including the borrower . . . ." As a result, Fannie Mae stated the Girgis loan was ineligible for delivery.

In March 2014, Flagstar repurchased the Girgis loan for $130,868.09, noting that the general problem was an underwriting error and fraud. More specifically, Flagstar stated on a loss reimbursement form that there was "[u]ndisclosed debt, occupancy misrepresentation and [failure to provide] a final inspection as required on the approval letter." Nothing on the record indicates that Flagstar notified Money Wise about Fannie Mae's demand for reimbursement until after it had already settled that claim. Instead, it appears that after settling with Fannie Mae, Flagstar sent a written demand for indemnification to Money Wise, who refused to pay for Flagstar's losses on the Girgis loan.

In September 2014, Flagstar filed a complaint against Money Wise. Flagstar asserted that Money Wise had breached the broker agreement by selling a loan containing an "untrue statement of material facts" contrary to the warranty in § 2(f) of the agreement and by failing to indemnify Flagstar pursuant to the § 7 indemnity clause for the losses it incurred on the Girgis loan.[1]

Flagstar moved for summary disposition pursuant to MCR 2.116(C)(10). Pertinent to this appeal, Money Wise argued in response that the indemnity clause required Flagstar to tender its defense of the case to Money Wise and that its failure to do so required Flagstar to now prove that it was actually liable to Fannie Mae on the underlying claim before it would be entitled to indemnification from Money Wise. Money Wise contended that Flagstar could not prove actual liability because the six-year statute of limitations for breach of contract had expired on the underlying claim. Alternatively, Money Wise argued that when Flagstar sold the Girgis loan to Fannie Mae the sale acted as an assignment of Flagstar's rights under the broker agreement, including the right to indemnification. As a result, Flagstar no longer had the right to seek indemnification for losses on the Girgis loan.

---

[1] The § 7 indemnity clause provided that Money Wise would

indemnify, defend, and hold [Flagstar] harmless from and against any and all claims, losses, costs, or damages, including reasonable attorney fees arising from the sale of any loan to [Flagstar] at such time and in such manner as set forth in the Seller's Guide."

Flagstar responded that the September 2013 letter from Fannie Mae was sufficient to establish that it was actually liable to Fannie Mae on the underlying claim. Flagstar further argued that the statute of limitations did not bar Fannie Mae's claim because the claim had not accrued until after Fannie Mae suffered a loss on the loan. Finally, addressing Money Wise's alternative argument, Flagstar asserted that pursuant to the broker agreement, it had only assigned its rights to the Girgis loan to Fannie Mae and it still retained its right to indemnification under the broker agreement.

After argument, the trial court granted Flagstar's motion for summary disposition.

## II. INDEMNIFICATION

### A. STANDARD OF REVIEW

Money Wise argues on appeal that the trial court erred when it granted Flagstar's motion for summary disposition. Specifically, Money Wise argues that Flagstar was required to prove actual liability to Fannie Mae, which it could not do because the underlying claim was barred by the statute of limitations for breach of contract claims. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

### B. ANALYSIS

The threshold question in any indemnification action is whether the indemnity clause applies to the underlying claim at issue. *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 174; 848 NW2d 95 (2014). To answer this question, this court conducts a "straightforward analysis of the facts and the contract terms." *Id*. (citation and quotation marks omitted). However, in this case, the parties do not contend that the indemnity clause does not apply to the underlying claim. Instead, Money Wise asserts that Flagstar must prove that it was actually liable for the underlying claim, whereas Flagstar asserts it must only prove that it was potentially liable for the underlying claim.

In *Grand Trunk Western R R, Inc v Auto Warehousing Co*, 262 Mich App 345, 354-355; 686 NW2d 756 (2004), this Court held that "if an indemnitee settles a claim against it before seeking the approval of, or tendering the defense to, the indemnitor, then the indemnitee must prove its *actual* liability to the claimant to recover from the indemnitor." (Emphasis in original). "However, the indemnitee who has settled a claim need show only *potential* liability if the indemnitor had notice of the claim and refused to defend." *Id*. at 355 (emphasis in original).

The trial court held that the actual liability standard from *Grand Trunk* did not apply because the contractual duty to defend in this case did not require Flagstar to tender its defense whereas the duty to defend in *Grand Trunk* did require the indemnitee to tender its defense before the duty to defend would be triggered. However, application of the actual liability standard does not turn on whether the indemnity clause mandates the indemnitee tender its defense. Instead, the reasoning behind the standard was explained by the Sixth Circuit in *Tankrederiet Gefion A/S v Hyman-Michaels Co*, 406 F 2d 1039, 1043-1044 (CA 6, 1969):

It certainly seems appropriate for B, the party desiring to settle and possessing the facts pertaining to the settlement, to be required to tender C the choice of approving the settlement or of going forward with the defense in exchange for a hold-harmless agreement. We assume that such a hold-harmless agreement would constitute C's financially responsible guarantee that B would under no circumstances be forced to pay more than the sum for which it was prepared to settle. If such a tender were refused and B settled, then we think the proofs required in the subsequent suit against C would appropriately be potential liability and reasonableness of the settlement.

The ultimate problem with any other rule than that which the District Judge laid down here is that potentially it would allow B (the original defendants) to spend C's (the third-party defendant) money without the final judgment of a court or C's agreement. Deciding whether to try a case to judgment or to settle it involves elements of legal evaluation, of financial capacity to take risk, and of appetite for court room conflict which vary widely among litigants. We hold that under the facts of this case B cannot compel C to accept B's evaluation of these critical factors. Any other rule would deny C any opportunity to contest B's liability to A—a liability which C may be required to pay.

We adopted the *Tankrederiet* court's reasoning in *Ford v Clark Equip Co*, 87 Mich App 270, 277; 274 NW2d 33 (1978), noting that:

The policy of this state is to encourage settlements of suits. The settlement of a suit benefits both parties and the public. If this policy is to be effective, the burden on the defendant who settles *after a tender of the defense* to the contractual indemnitor is refused must not be too heavy. We, therefore, hold that to recover on the contract of indemnity, [the indemnitee] need show only its potential, as opposed to its actual, liability to [the underlying claimant]. [Emphasis added; citations omitted.]

Applying the rule from *Grand Trunk* and *Ford*, it is plain that because Flagstar did not seek approval from or tender its defense to Money Wise before settling with Fannie Mae on the underlying claim, Flagstar must prove it was actually liable to Fannie Mae before it can recover from Money Wise.

The burden of establishing potential liability is lighter than the burden of establishing actual liability. See *id*. In *Grand Trunk*, we explained:

Potential liability actually means nothing more than that the indemnitee acted reasonably in settling the underlying suit. The reasonableness of the settlement consists of two components, which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee

-4-

will have cleared this hurdle. [*Grand Trunk*, 262 Mich App at 355-356, quoting *Ford*, 87 Mich at 278.]

The burden of proving potential liability can be satisfied if the indemnitee can establish a genuine issue of material fact regarding whether the underlying claim would have been successful. *Grand Trunk*, 262 Mich App at 358.

In contrast, actual liability is liability that exists "in fact or reality" and is "not false or apparent." See *Merriam-Webster's Collegiate Dictionary* (11th ed). As such, in order to prove actual liability, the indemnitee must establish that it would have lost on the underlying claim had it brought that claim to trial. An indemnitor can make that showing by presenting evidence that the underlying claimant would have been entitled to summary disposition on the claim had such a motion been brought.

It is well-established that when reviewing a motion for summary disposition under MCR 2.116(C)(10), a court considers "affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Greene v A P Prods, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (citation and quotation marks omitted). Likewise, it is well-established that such a motion should be granted "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). In making that determination, the court may not make factual findings on disputed factual issues during a motion for summary disposition and may not make credibility determinations. *Burkhardt v Bailey*, 260 Mich App 636, 647; 680 NW2d 453 (2004).

Here, the underlying cause of action is breach of contractual warranty. The contract allegedly breached is not included in the lower court record. Instead, the only proof that a warranty existed was Fannie Mae's assertion in its September 2013 letter to Flagstar demanding reimbursement for the breach of that warranty. Further, the only proof that the contractual warranty was breached is Fannie Mae's assertion that the warranty was breached.[2] Likewise, the only proof that there was fraud or misrepresentation on the origination application is, again, Fannie Mae's letter stating that a "recent" credit report showed that the Girgises had four undisclosed mortgages that were taken out before the subject mortgage closing.

Nevertheless, even without the underlying documents, the September 2013 letter is sufficient to establish (1) that the underlying loan application contained misrepresentations, (2) that the misrepresentations rendered the loan ineligible for delivery to Fannie Mae, and (3) that the misrepresentation on the application resulted in a breach of Flagstar's warranty to Fannie Mae. Accepting these facts, Flagstar submitted sufficient unrebutted evidence to show that it was actually liable to Fannie Mae. Money Wise presented no contrary evidence and instead asserts that the failure to disclose the additional mortgages may not have been a material breach, especially considering that the mortgage was in good standing for three and a half years before

---

[2] A loss reimbursement statement submitted by Flagstar also suggests the agreement between Flagstar and Fannie Mae was breached because of an underwriting problem and fraud.

default. However, an indemnitor "may not rely on general allegations or denials to overcome a motion for summary disposition." *Grand Trunk*, 262 Mich at 358. Moreover, "[i]f a party opposing a motion for summary disposition fails to present evidentiary proofs establishing the existence of a material factual dispute, summary disposition is properly granted." *Id*. at 360. Accordingly, on these facts Flagstar met its initial burden of showing that it was actually liable on the underlying claim.

However, if the underlying suit would have been successfully defended, then the indemnitee cannot recover on the indemnity claim. *Id*. at 357. Money Wise argues that Flagstar could have successfully defended against Fannie Mae's claim for breach of contractual warranty by raising the statute of limitations as a defense. The statute of limitations for breach of contract is six years. MCL 600.5807(8). Further, generally, a breach of contract claim accrues on the date of the breach, *Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, PC v Bakshi*, 483 Mich 345, 355; 771 NW2d 411 (2009), which suggests that the breach in this case occurred in 2006 and the limitations period expired in 2012, one year before Fannie Mae demanded reimbursement.

However, a claim "for damages based on a warranty of quality or fitness the claim accrues at the time the breach of warranty is discovered or reasonably should be discovered." MCL 600.5833. The record shows that the Girgis loan did not enter into default until 2009. And the demand letter, written in 2013, reflects that a "recent credit report" revealed the four additional mortgages. Accordingly, given that there was no need to obtain a credit report before the Girgises defaulted on the loan 2009, it appears that the earliest Fannie Mae should have discovered the breach of warranty was 2009. Moreover, given that the 2013 letter refers to a "recent credit report," it appears that Fannie Mae actually discovered the claim sometime in 2013. Thus, on this record, the six-year limitations period accrued between 2009 and 2013, and the statute of limitations would not have run until sometime between 2015 or 2018. Fannie Mae could have therefore filed a timely claim for relief in 2013 if Flagstar had not determined that it was obligated to reimburse it for its losses on the Girgis loan.

## III. ASSIGNMENT OF RIGHTS

### A. STANDARD OF REVIEW

Money Wise argues that under the plain language of the broker agreement, Flagstar assigned all of its rights under the agreement—including its right to indemnification—to Fannie Mae when it sold the Girgis loan. We review de novo the proper interpretation and application of a contract. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 528; 620 NW2d 840 (2001).

### B. ANALYSIS

In interpreting a contract, this Court looks to the plain and ordinary meaning of the words of the contract. *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 627; 839 NW2d 693. "We cannot read words into the plain language of a contract." *Id*. at 628. "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013) (citation and quotation marks omitted). Further, a contract must be construed as a whole, with "all its parts . . . harmonized so far as reasonably possible[.]" *Comerica Bank v Cohen*, 291 Mich App 40, 46;

805 NW2d 544 (2010) (citation and quotation marks omitted). If possible, every word should be given effect and no part should "be taken as eliminated or stricken by some other part unless such a result is fairly inescapable." *Id.* (citation and quotation marks omitted).

Here, the broker agreement provides:

[Flagstar] shall have the right to assign this Agreement and its duties, obligations, or rights hereunder upon written notice to [Money Wise]. In the event that [Flagstar] sells or assigns all or part of its interest in any mortgage loans that are subject to this Agreement to a third party, such third party shall succeed to all rights of [Flagstar] hereunder with respect to such mortgage loans.

This provision clearly contemplates two different situations where Flagstar could assign its rights. The first sentence provides that Flagstar can assign its rights, duties, and obligations under the broker agreement only after providing written notice to Money Wise. The second sentence provides that the sale to a third party of all or part of Flagstar's interest in any mortgage acts as an assignment of Flagstar's rights with respect to the mortgage loan that was sold. If the sale of a mortgage automatically assigned all of Flagstar's rights under the broker agreement to the third party, then the written notice requirement in the first sentence would be nothing more than surplusage. Thus, based on the plain language of the contract, Flagstar's sale of the Girgis loan to Fannie Mae only assigned the rights "with respect to [that] mortgage loan." It did not assign Flagstar's rights under the broker agreement, which could only be assigned after providing written notice to Money Wise.

The trial court did not err in granting summary disposition.

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello